## GWINN v. HUBBARD.

An action of debt lies in this state against a sheriff for an escape on execution; the *English* statutes authorising such an action being in force here.

The sheriff is liable for the escape of a party taken on execution in a civil action, and legally in his custody, though there be no gaol in the county.

A *capias ad satisfaciendum* cannot be issued by the clerk of a Circuit Court, nor by a justice of the peace, unless a *fieri facias* be first issued and returned *nulla bona*, or an affidavit be made by the plaintiff that the debtor is about to leave the state, &c.

A justice of the peace, having rendered judgment for a certain sum against a defendant, issued an execution thereon, commanding the constable to levy the amount of the defendant's goods, and, for want of goods, to take his body, &c. *Held*, that this writ gave no authority to the constable to arrest the defendant, nor to the sheriff to receive or detain him in custody.

*Monday, May 28.*

APPEAL from the *Bartholomew* Circuit Court.

STEVENS, J.—On the 19th of *April*, 1830, the plaintiff recovered five several judgments against *Samuel Downing*, before a justice of the peace of the county of *Bartholomew*. On the 21st of *August*, 1830, a writ of execution issued on each judgment directed to a constable of the township, commanding him to levy the several judgments, set forth in the several writs, of the goods and chattels of *Downing*, but for want of property whereon to levy, then to take his body to the gaol of the county, and him deliver into the custody of the sheriff, there to be detained until payment should be made or he otherwise legally discharged. Which several writs came into the hands of the constable on the day of their date, and he, finding no goods or chattels, afterwards, on the 23d day of *August*, 1830, arrested *Downing* by his body on those writs, and delivered him together with the writs to *John C. Hubbard*, the defendant, he being then and there the sheriff of the county; who immediately afterwards,

knowingly and wilfully, permitted the prisoner to escape and go at large. The plaintiff brought an action of debt against the sheriff for the escape. To which action the sheriff pleads in justification, that, at the time *Downing* was delivered to him on those writs, there was no gaol in the county and that the plaintiff well knew it. That the boards doing county business had neglected and refused to cause a gaol to be erected, although they had been several times, by the Circuit Court and grand juries of the county, requested so to do. And that because there was no gaol erected in the county, he did knowingly and wilfully permit the escape as he lawfully might do. To this defence the plaintiff demurs, and the demurrer is overruled, and judgment rendered for the defendant.

Three points have been raised for the consideration of the Court.

The first is, whether the action of debt will lie in this state against a sheriff for an escape on the writ of *capius ad satisfaciendum?* By the common law debt only lies upon contracts. Escapes are considered torts, and are so treated by Courts of justice. Hence, at common law, the remedy is an action on the case. The statutes of *West.* 2, ch. 11, (13 Ed. 1,) and 1 *Rich.* 2, ch. 12, give the action of debt for escapes on the writ of *ca. sa.*, and if these statutes are in force here the action of debt lies. This state has adopted not only the common law of *England* but also all the statutes in aid thereof, made prior to the 4th year of the reign of *Jac.* 1, (except the 2 sec. of the 6 ch. 43 *Eliz.*, the 8 ch. of the 13 *Eliz.*, and 9 ch. 37 *Hen.* 8,) of a general nature and not local to that kingdom. Those statutes are affirmative; they take away no common law remedy but add one, leaving the party at liberty to make his own election as to what remedy he will adopt, and are clearly in aid of the common law and in full force here. *Steere* v. *Field*, 2 Mason, 486.—*Bonafous* v. *Walker*, 2 T. R. 129.—*Alsept* v. *Eyles*, 2 Hen. Bl. 108 (1).

The second point is, whether the sheriff is liable for escapes, until the county authorities have erected a gaol for the reception of prisoners? By the common law, each county has two prisons—one for the reception of criminals furnished by the public and called public gaols, the other for the reception of debtors, furnished by the sheriff himself. The sheriff may appropriate his own house for that use, or he may furnish any

other house he pleases in the bounds of his county; and the government is bound to indemnify him. He is bound at his peril to safely keep all such prisoners in safe custody, until the debt is paid or the prisoner otherwise legally discharged; and to enable him to do so, the whole means and power of the county are at his disposal. Nothing except public enemies, or the act of God, can release him from that obligation. *Smith* v. *Hillier*, Cro. Eliz. 167.—6 Bac. tit. sheriff, letter H. 5.—*Day & Whittlesey* v. *Brett*, 6 Johns. Rep. 22.—*Bartlett* v. *Willis*, 3 Mass. R. 86. The defendant rests his defence in this particular, on the statutes which require the boards doing county business in the several counties, to cause a court-house, gaol, and other public buildings to be erected in their respective counties as soon as convenient. He insists, that these statutes. have taken the power and responsibility out of the sheriff's hands, and given them to these boards; and that the sheriff is no longer liable. In *South-Carolina*, in the case of *Smith* v. *Hart*, 2 Bay's R. 395, and in *Massachusetts* in the case of *Burrell* v. *Lithgow*, 2 Mass. 526, where there are statutes similar in substance to ours, it was held that although the public authorities may have erected prisons, yet if the prisoners escape by reason of the insufficiency of the prison, the sheriff is liable— he being bound to see and know that his prison was sufficient. By our statutes, the time of erecting those public buildings is left entirely to the discretion and convenience of those boards, without any provision for the detention of prisoners until the public prison may be erected. It cannot be presumed, that the legislature intended that no person should be imprisoned, until it might suit the convenience of the county authorities to erect prisons. The record in this case shows, that there was no public prison in the county in which the prisoner could have been detained; and, in such cases, the Court thinks it is very clear that the common law governs. The sheriff ought to have furnished a prison, and detained the debtor in close custody until the debt was paid or the prisoner otherwise legally discharged, if he was legally in his custody as such debtor (2).

The third point is, whether this commitment was legal or illegal. By the act of 1824, and the amendatory act of 1825, respecting the writs of execution, it is provided that no writ of *ca. sa.* shall be issued by the clerks of the Circuit Courts, until after a return of *nulla bona* to a *fi. fa.*, unless the execution

plaintiff will make and file an affidavit that the judgment-debtor is about to leave the country. And by the 12th sec. of the act of 1825, it is provided that justices of the peace shall have full power to issue the writ of *ca. sa.*, on judgments rendered by them, under the same restrictions, rules, and regulations, as are provided for the issuing similar writs by the clerks of the Circuit Courts. This is the only statutory provision, so far as it relates to justices of the peace and constables, that was at the time of this commitment in existence (3). The first natural branch of this point is the writs of execution, by which *Downing* was arrested and delivered to the sheriff. If these writs did not give any legal authority to arrest the execution-defendant, they gave no authority to the sheriff to hold him in custody. The first objection to the writs is, that they are double in their character. They appear upon their face to have been intended to have the force, operation, and effect of a *fi. fa.* and a *ca. sa.* both. They first command the constable to levy the debt of the goods and chattels of the defendant; but for want thereof, to arrest him by his body and convey him to the gaol of the county, and deliver him to the sheriff, &c. There is no such writ as this known to the common law. Our statute authorised no such writ; nor is there any sanctioned precedent to support the issue of such writ. Again, the statute is express that no *ca. sa.* shall issue until after a *fi. fa.* has issued, and a return of *nulla bona* is made thereto; unless an affidavit is made as above noticed. In this case, the *fi. fa.* and *ca. sa.* both issued at the same time, and were put into the officer's hands at the same time, if those writs can be construed into writs of *ca. sa.* The constable considered them as writs of *fi. fa.* and so treated them, for by his return he says, that he searched for goods and chattels and found none. We think they cannot be considered any more than writs of *fi. fa.*; and the officer should have returned them as such. They cannot be writs of *fi. fa.* and of *ca. sa.* at the same time; and as the law is positive that no *ca. sa.* shall issue until after the return of *nulla bona* to a *fi. fa.* or an oath made as aforesaid, they gave no legal authority to arrest the defendant.

*Per Curiam.*—The judgment is affirmed with costs.

*P. Sweetser*, for the appellant.

*C. Fletcher* and *H. Gregg*, for the appellee.

(1) The general act, referred to in the text, adopting the common law, &c. was first adopted in 1795, by the governor and judges of the *North-Western*

May Term, 1832.

*Territory*, from the statutes of *Virginia*, where it had been enacted in 1776. The *Virginia* act, however, was repealed in 1792. A distinction, says Judge *Tucker* was made in *Virginia*, even before the revolution, between such British statutes as were passed anterior to the 4*th year of James the* 1*st*, (1606,) and those subsequently enacted. The former, (so far as they were applicable to the circumstances of the colony,) were held to be in force in *Virginia;* the latter were not so; probably because the first charter (granted about that time to Sir *Thomas Gates* and others) provided that the president and council should govern the colony according to such laws as should be prescribed by the king. This distinction between statutes prior and subsequent to the 4*th of James the* 1*st* was retained at the revolution. 1 Tuck. Comm. 8.

The ordinance of 1787, for the government of the *North-Western Territory*, says, that the inhabitants of the territory shall always be entitled to the benefit of judicial proceedings, *according to the course of the common law*. Art. 2. The statute of 1795, supra, adopting the common law, &c., is inserted in our Rev. Codes of 1807, 1818, 1824, and 1831.

The action of debt for an escape on execution is generally preferable to that of case. In case, the jury give such damages as they choose, and therefore in cases of hardship, a small sum is sometimes given. But, in debt, the sheriff stands in the situation of the original debtor, and the jury cannot give a less sum than the creditor would have recovered against the prisoner, that is, the sum endorsed on the writ, and the legal fees of execution. 1 Selw. N. P. 504.

The *English* statutes cited in the text are confined to escapes out of execution; and an action on the case, therefore, continues to be the only remedy for the escape of prisoners who have been arrested on mesne process. 1 Selw. supra, note.

(2) In an action on the case against the sheriff for an escape, the Court of Appeals in *Maryland* says,—"It is not denied that in such a case, (an arrest in a civil action, or a commitment for want of bail,) the sheriff would be liable for an escape, notwithstanding the public gaol should happen to be out of repair. That is his own look out. He takes upon himself the office with its responsibilities, and is bound for the safe keeping of those whom the law intrusts to his custody. Public policy requires it, and in an action against him for an escape, it is not a sufficient answer to say that the gaol was out of order." *Slemaker* v. *Marriott*, 5 Gill & Johns. 406.

(3) Vide Rev. Code, 1831, pp. 240, 315. As to the law, independently of the statute, relative to the issuing of a *ca. sa.*, see *Steele* v. *Murray*, Vol. 1, of these Rep. 179 and note.