Nov. Term,
1836.

SPADER
v.
FROST.

---

SPADER and Others *v.* FROST and Another.

If an execution-debtor escape from the prison-bounds, the bond for the limits is forfeited; and his subsequent voluntary return to the bounds before the commencement of a suit on the bond, is no defence to such suit.

Such a bond for the limits, though it should be insufficient under the statute, may still be good at common law.

Although the condition of such a bond do not contain a recital of the matters which led to its execution, and which show a connection between it and

the obligee,—the bond may still be sued on, and the omission be supplied by averments.

In an action on such a bond, the measure of damages is the amount of the debt for which the debtor was committed, together with interest and costs.

The replication in such a case, setting out the condition of the bond, &c., should aver the existence of a judgment on which the execution issued; and it should conclude with a verification.

It is a good plea to a suit on such a bond, that the execution-debtor left the bounds with the previous consent and license of the plaintiff.

APPEAL from the *Montgomery* Circuit Court.

Dewey, J.—Debt by *P. G.* and *J. Frost* against *Spader, Crane,* and *Ketcham,* on a bond for the penalty. The defendants craved *oyer* of the obligation and condition. The former is in the usual form, the latter as follows: "The condition of the above obligation is this, that if the above-bound *Spader,* from and after the date of these presents, shall continue a true prisoner in the custody of the jailer or prison-keeper, and within the limits of the prison-bounds in the county and state aforesaid, without attempting any manner of escape, until discharged by law, then this obligation to be void, otherwise to remain in full force and virtue." The defendants pleaded, first, general performance of the condition; secondly, that although, on, &c., *Spader* departed without the prison-bounds, he afterwards, and before the commencement of the suit, voluntarily returned within them, and had ever since remained a true prisoner without attempting any manner of escape; and thirdly, *Crane* and *Ketcham,* without *Spader,* pleaded that *Spader* left the prison-bounds by the consent and license of the plaintiffs previously given, and that he had not made, or attempted to make, any other escape than his departure in pursuance of such consent and license.

To each of the two latter pleas the plaintiffs demurred generally, and had judgment on each demurrer. To the first plea they replied, denying the performance of the condition alleged by the defendants, averring that on, &c., *Spader* was in the custody of the sheriff of *Montgomery* county, by virtue of a *ca. sa.* in favour of the plaintiffs, (setting it out); that being desirous to obtain the benefit of the prison-bounds, he, together with the other defendants, executed the bond, and that in consideration thereof he was admitted to the liberty of the jail-limits. The replication then assigns the breach of the condition of the bond by the escape of *Spader* from the bounds of

*Nov. Term, 1836.*

SPADER
v.
FROST.

*Saturday, December* 31.

the prison, and concludes to the country. To this replication the defendants demurred specially. Judgment on the demurrer for the plaintiffs, and a jury to inquire of the damages.

The plaintiffs offered in evidence the record of a judgment in their favour against *Spader*, rendered in the *Montgomery* Circuit Court, and also the *ca. sa.* on which he was imprisoned. To the admission of each of which as evidence, the defendants objected; the objections were overruled, and both were read to the jury. The defendants then offered to prove to the jury, in mitigation of damages, the insolvency of *Spader*, and that he left the prison-bounds with the consent of the plaintiffs. This evidence was objected to by the plaintiffs, and excluded by the Court. After the testimony was closed, the defendants moved the Court to instruct the jury, that they should assess such damages as the plaintiffs had actually sustained by the escape of *Spader*, and that they were not bound to find the whole amount for which he was imprisoned, unless the real loss of the plaintiffs should be found to equal that sum. This instruction the Court refused to give, but charged the jury, that the sum for which *Spader* was imprisoned should be the measure of damages to be found by them. The defendants excepted, severally, to all the decisions of the Court respecting the testimony, and instructions to the jury. The verdict was in accordance with the instructions; and there was a final judgment for the plaintiffs, from which defendants appealed.

Many objections have been urged against the validity of this judgment. Among them are the following, which we shall now consider without regard to the order in which they present themselves upon the record.

1. That the Court erred in sustaining the demurrer to the second plea of the defendants.

That plea alleges the return of *Spader* into the prison-bounds soon after his escape, and his continuing there a true prisoner until the commencement of this suit. The appellants very properly contend, that such a defence would have been available by the sheriff in an action against him for a negligent escape, but they erroneously suppose, that there is an analogy between the defence to which he would have been entitled, and their rights as defendants in this case. When a debtor is committed to the custody of the sheriff, for the purpose of

enforcing the claims of tho creditor, he is responsible for his safe-keeping, at least on final process, against all contingencies excepting those arising from public enemies and providential occurrences. If the prisoner escape by other means, even without any fault of his keeper, the law implies negligence on the part of the latter, and gives a remedy to the creditor against him. The rigor of his responsibility is, however, so far relaxed as to excuse him, if by his own diligence, or by a voluntary return, the prisoner is again placed in his custody. The reaption, by our statute, must take place within three months. If the escape be by the consent, or through the connivance of the officer, the recovery of the prisoner will not excuse him. The action against the sheriff is founded on tort, consisting in the violation of an official duty, the performance of which is designed by the law to be strictly enforced, for the protection of important interests connected with it. This action is based on a contract, by which the defendants bound themselves that *Spader* should remain within the prison-limits, until duly discharged. By this contract, *Spader* enjoyed benefits he would not have had without it. Its object was to lessen the evils of his situation, without impairing the security of his creditors. Whether he would observe this contract, and continue to be a pledge for the debt for which he was in custody, or incur the consequences of violating the contract and withdrawing the pledge, was entirely optional with him. He surely cannot maintain that there is any analogy between his situation, and that of a sheriff whose prisoner has escaped without his consent and against his will. Between *Spader's* voluntary breach of the condition of his bond, and an escape by the consent of the sheriff, there may indeed be some analogy; and both are followed by the same effect—an absolute responsibility. It cannot be doubted that the unauthorised departure of *Spader* from the prison-bounds, was a breach of the condition of his bond, and produced a forfeiture of it. The right of action instantly accrued upon the committing the breach, and could not be defeated by his return to imprisonment. 7 Johns. Rep. 168, *Kip* v. *Brigham et al.*—16 Johns. Rep. 181, *Sweet* v. *Palmer.*—2 Litt. Rep. 218.—3 Mass. Rep. 86. The demurrer to the second plea was correctly sustained.

2. It is contended that the bond is invalid because it does not conform to the statute under which it was given.

This objection arises from one of the causes of demurrer to the replication, which does not show whether the penalty of the bond is or is not in double the amount for which *Spader* was imprisoned. Our statute regulating "prisons and prison-bounds," requires that the penalty of the bond to be given to enable the prisoner to have the benefit of the prison-bounds, shall be "in double the sum for which such prisoner stands committed." It is a sufficient answer to the objection now under consideration, to say that the replication furnishes no evidence that the penalty is not such as the statute requires. As the amount which was due on the execution averred in the replication, is left uncertain in consequence of certain unspecified credits therein mentioned, we have no information as to the precise sum for which *Spader* was committed, and of course know not whether the penalty of the bond is double that sum or not. We are therefore unable to pronounce whether the bond, in this respect, is valid or invalid under the statute. But admitting that the penalty does not conform to the requisition of the statute, that would not be a good objection to the sufficiency of the replication, for the bond would not, for that reason, be a nullity. The facts disclosed by the replication,—that *Spader* was imprisoned by virtue of the *ca. sa.* in favour of the plaintiffs, that he was desirous of availing himself of the benefit of the prison-bounds, and that he did actually receive that benefit in consequence of executing the bond,—constitute a good consideration, and render that instrument binding upon him and his sureties at common law. 7 Mass. Rep. 98.—Id. 200.—8 id. 373.—3 Conn. Rep. 63.—1 Munf. Rep. 508.

3. Another cause of demurrer to the replication is, that the bond on its face shows a want of consideration.

This objection is predicated upon the fact, that the condition of the bond contains no recital of the matters which led to its execution, or which show a connection between it and the plaintiffs, and must have prevailed had not the bond been aided by the averments in the replication. It has already been seen that these averments set forth a good consideration for the obligation. They are explanatory of the circumstances under which it was executed, and show the propriety of the condition. *Chitty* says, "where a variety of facts preceded the contract, and are so connected with it that the statement of

them is necessary to render the count intelligible," (and the same may be said of any other stage of the pleading,) it is proper to aver them "in the description of the consideration or of the contract." 1 Chitt. Pl. 318, 395. Accordingly we find decisions of high authority, in which obligations both common law and statutory, similar to the one in question, have been sustained. In one case, the bond was a common law instrument, executed to the marshal of the King's Bench, conditioned that the obligor, being a prisoner in the marshalsea, should remain a true prisoner, without attempting any manner of escape. 1 Saund. 15. In two other cases, the bonds were executed under the statute 23 *Henry* 6, c. 9, to the sheriff. That statute provides that sheriffs, &c. "should let out of prison all manner of persons by them arrested or being in their custody, by virtue of any writ, bill, warrant, &c., upon reasonable sureties to keep their days," &c. In all the three cases, the declaration was upon the obligatory part of the bond, and the condition was spread upon the record by *oyer*. None of the conditions contain a recital explanatory of the cause of making the contract. But the pre-existing facts, connected with the execution of the bond, are in each case averred in some stage of the pleadings subsequent to the declaration. No objection was taken on the ground of the absence of the recital in the condition, although in one of the cases, the validity of the bond was brought directly before the Court by demurrer. 1 Saund. 156.—2 Saund. 75. It is true that *Chitty* gives a more approved form of bonds under the statute of *Henry* 6, in which the condition contains a recital, at length, of all the facts conducing to the contract; but he states that the obligor is not bound to make such recital. 3 Chitt. Gen. Prac. 364. The condition of the bond, which is the foundation of this suit, contains nothing inconsistent with our statute. On the contrary, its phraseology is the same as that of the statute. If its penalty be such as the act requires, it is a valid statutory instrument. The objection to the replication under consideration cannot be sustained.

4. It is urged that the instruction of the Court to the jury, that the sum for which *Spader* was committed on the execution, was the legal measure of damages and should be the amount of the verdict, was wrong.

By the common law, in an action on a penal bond, the

plaintiff could assign only one breach of the condition. If the jury found the issue in his favour the obligation was forfeited, and judgment was rendered for the penalty. The remedy of the defendant was in equity, where, upon a full view of all the circumstances, the Court reduced the judgment to the sum in which the plaintiff had been really injured by the violation of the contract. As this mode of arriving at justice was dilatory and expensive, the statute of 8 and 9 *Will.* 3, similar in its provisions to those in our practice act on the same subject, was passed, providing that the plaintiff might assign several breaches, and that the jury should assess such damages as he could prove he had sustained. In performing this equitable office, however, the jury has always been governed, in certain cases, by prescribed rules of law operating as a measure of damages, according to the character of the transaction between the parties. As for instance, if the covenant broken is for the delivery of personal property, its value at the time the article is stipulated to be delivered is the criterion of the verdict. If the action is for the breach of the covenant of seisin in a conveyance of real estate, the consideration-money and interest from the time of payment is the measure. On bail-bonds for the appearance of a defendant, the amount of the debt in the original action, or at least the sum named in the affidavit for bail, if it be less than the judgment, is to govern the assessment of damages. This class of cases bears a close resemblance to that presented by the record. In both, the body of the debtor is considered as a security for the debt, and in *England* inquiry is never made into the circumstances of the debtor, with a view to mitigate the damages occasioned by the breach of the condition of the bond. In a large majority of litigated cases on bonds with condition, however, it must be admitted that the jury are necessarily left to the exercise of a sound discretion, in fixing upon the amount of injury a party has sustained in consequence of the violation of the contract.

Our statute authorising prison-bounds-bonds, is silent as to the damages which are to be awarded upon a breach of their conditions. But it gives the creditor a right of action upon them, upon the escape of the prisoner, whether he be confined upon mesne process or execution; and it takes away the remedy which would otherwise have existed against the sheriff, holding him only responsible for the sufficiency of the sureties. In

giving a construction to this statute, we must have regard to the law as it stood at the time of its passage, and the rights and interests which are designed to be affected by it. It is very evident, that the amelioration of the condition of the prisoner by relieving him from close confinement, is the principal object of the law. But in performing this office of humanity to the debtor, it can hardly be supposed the legislature designed to impair the remedy of the creditor. That they meant to transfer, and have transferred, that remedy from the sheriff to the sureties of the escaping prisoner to some extent, is certain. Before the passage of the statute, the remedy against the sheriff was well defined and clearly understood, in cases of escapes from imprisonment on execution. It was equally well established when the escape is from mesne process: but to this species of escape, on the present occasion, we pay no attention, and mean to settle no principle in regard to it; and we also leave out of view the extent of the liability of the sheriff in an action on the case for escape from final process. By virtue of the statute of 2 *Westm.* c. 11, which is in force in this state, the sheriff was amenable to the creditor in an action of debt for escape from execution, to the full extent of the debt—not by any direct expression of that act—but by an equitable construction given to it by the *English* Courts soon after its passage, which has ever since been adhered to by them, and by the Courts of such of the states as have adopted the statute; and it is believed that it prevails in all or nearly all of them.

It has been urged in argument that there is better reason for holding the sheriff thus liable, than there is for imposing the same liability on the escaping debtor and his sureties, because the sheriff has the right of recaption, and the bail has not. We draw a different conclusion from these premises. If the liability of the sheriff is the consequence of his right to re-commit, it would follow, that in voluntary escapes he would not be liable at all, for in such escapes he has no right to retake. The truth is, as has been already observed, that the privilege of the sheriff to re-capture after a negligent escape, is a mere mitigation of the rigorous responsibility which the policy of the law has thrown upon him, to insure his vigilance and honesty in the discharge of his trust, and excuses him only when without any fault of his in the escape, he shall restore to the creditor the means of enforcing the payment of the debt, by his hold

Nov. Term,
1836.

SPADER
v.
FROST.

upon the debtor. When a prisoner has taken the benefit of the prison-limits, the sheriff has no longer any right to restrain, or to re-commit him if he escape. 4 Johns. Rep. 45. Admit that the creditor, in such a case, has the right to issue another execution, or to commence suit on his judgment—with regard to which we give no opinion—we cannot believe that the legislature designed to substitute a remedy so very precarious, in the place of the sure resort which he possessed against the sheriff. Nor can we perceive why a debtor, who has abused the privilege which the law gives him, as well as the confidence of his bail, should stand in a better situation than he would, had he effected the more difficult and less discreditable task of breaking from close confinement. It may be said his sureties are not in fault, and this may be true; *still there* cannot be one rule of damages for the principal, and another for them. The contract of all has been broken, and it is but just, that the burthen should fall upon those whose confidence in the wrong-doer enabled him to inflict the injury.

We think, too, that the construction of the statute contended for by the appellants—which is, that such damages only as might appear to have been sustained by the escape, taking into view the insolvency of the debtor, (if such be the fact,) would be of dangerous tendency, by holding out temptation to fraud and collusion between the prisoner and his friends. Without possessing visible property, he might have the means of paying his debts. In such cases, it would be easy for a dishonest debtor to procure bail for the prison-bounds, effect his escape, and his sureties be able to reduce the damages to a nominal sum by seeming proof of his insolvency. Such a construction of this statute would be almost tantamount to abolishing imprisonment for debt. If such a result be desirable, the power to produce it lies in other hands than ours. As the law is, we consider the body of a debtor in execution in the character of a pledge for the debt, and therefore conclude that the instructions which the Court gave to the jury were right, and might also have embraced the interest and cost.

In accordance with this opinion are the decisions of several of the states, and we know none to the contrary. It is true, that in *North-Carolina* and *Kentucky* the rule of damages has been held to be different, in actions upon sheriffs' and jailers' official bonds, for the escape of an imprisoned debtor. We

apprehend, however, that there is a manifest difference between the rules which ought to govern the decision of such cases, and those applicable to the case before us. Besides, in *Kentucky*, on bonds for the prison-rules, the obligors have been held to be liable for the amount of the debt, interest, and costs; and the statute of that state, like ours, is silent as to the measure of damages. In both those states the sheriff, under a different form of action, is liable for the whole debt—in the former by motion, and in the latter by virtue of the statute of 2 *Westm.* c. 11. In *Pennsylvania*, in a suit on his official bond, the sheriff is not allowed to give in evidence in mitigation of damages, the insolvency of the escaping debtor. The following cases are directly in point, and fully sustain the opinion just pronounced. 7 Mass. 98.—Id. 200.—8 id. 373.—9 id. 221. 1 Gill & Johns. 248.—3 Conn. 70.—1 Bibb, 550.—2 M'Cord, 135. Although the *Massachusetts* statute regulating the prison-yard, at the time of making the decisions in that state above-quoted, fixed the liability of the escaping debtor and his sureties in double the amount of the debt for which he was imprisoned, yet those decisions were upon bonds held not to be valid within the statute, but binding at common law, and over which the Court had a right to exercise an equitable jurisdiction, in determining the extent of the liability for a breach of the condition. These decisions turn upon the principle, that the body of the debtor in execution is a pledge for the debt; and as that pledge is withdrawn by the escape, the creditor has a right to a judgment for that amount with interest and costs.

5. Another position assumed by the appellants turns us back again to the replication. Among the causes of special demurrer to that branch of the pleading is, that it contains no averment of the existence of a judgment in favour of the plaintiffs against *Spader*. This point has already been settled by this Court in the case of *Martin et al.* v. *Kennard*, 3 Blackf. 430. This objection to the replication should have been sustained, and the Court erred in overruling it.

6. There is still another cause of demurrer to the replication assigned, and that is, that it concludes to the country, whereas it should conclude with a verification.

There have been more legal refinement and subtilty than good sense, in settling the rules of pleading as to the con-

clusion of replications, &c., and in applying those rules in a great variety of instances. But there is a class of cases not subject to this imputation, in which the appropriate form is well established. That class is, where the replication sets forth new matter, which the rejoinder may traverse without repeating the matter of the plea, or answer and avoid without a departure. The law is clearly settled that such replications must conclude with a verification. We think the replication in the record is of that character. The counsel for the appellees supposes it was necessary that the replication should contain a traverse of the plea of general performance, and, therefore, that notwithstanding the new matter which it contains, it should conclude to the country. In this we think he is mistaken. It was not necessary or proper to make the traverse: after the averment of the introductory matter he should, at once, have assigned the breach; and in so doing he must necessarily have given an implied negative to the plea of performance. That course would have complied with all the forms which we have been able to find, and would also have been in conformity to the general principles laid down on the subject. He is also mistaken, in our apprehension, in supposing he can fortify himself behind the position, that the defendant could not have taken issue on any part of the replication without repeating the substance of his plea, nor answer it with new matter without a departure. He could, certainly, have denied the allegation of the execution contained in the replication without a repetition of his plea; or he could, in various ways, have admitted the allegation and avoided it without a departure. The following authorities are decisive of the impropriety of the conclusion of the replication. 1 Saund. Rep. 103 *a*, n. 3.—2 Wils. 66.—Douglass, 60.—2 Term Rep. 576.—2 Burr. 774.—1 Chitt. Pl. 616 (1).

The demurrer to the replication was well taken, and the Court erred in overruling it.

7. We think the Court committed another error in sustaining the demurrer to the third plea;—which is, that *Spader*, the debtor in execution, departed from the prison-bounds by the previous consent and license of the plaintiffs.

Whether a parol license is sufficient to destroy the effect of a covenant, or whether it can be such a waiver by one party to a specialty of something contracted to be done or not done by

the other, as to excuse him from performance on his part, we do not determine. But there is another point of view in which this plea constitutes a bar to the action; and that is by showing matter which operates as a satisfaction and discharge of the judgment—of the debt itself, to secure which the prison-bounds-bond was executed. If a debtor held in custody on execution, is set at liberty by the consent of his creditor, verbally given or otherwise, it is payment of the debt and a discharge of the judgment, so that neither an action of debt nor *scire facias* can afterwards be sustained, nor a new execution issue upon it. Satisfaction of the judgment is a good defence to an action on the bond, and a legal discharge from imprisonment under the judgment. It follows, therefore, of course that the departure of *Spader* from the prison-bounds, by the consent of the plaintiffs as set forth in the third plea, instead of constituting a breach of the condition of the bond, was only availing himself of that part of it which left him at liberty to go whenever he should "be discharged by law." Barnes, 205. 2 Mod. 136.—4 Burr. 2482.—1 B. & P. 242.—1 Salk. 271.— 1 Term Rep. 557.—6. id. 525.—7 id. 416.—2 East, 243,—16 Johns. 181.

Various other objections to the proceedings of the Circuit Court were urged, which it is now unnecessary to notice as they do not affect the merits of the cause, and may be easily obviated by attention to the future pleadings in the Court below.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*A. S. White*, for the appellants.

*I. Naylor*, for the appellees.

(1) It is a general rule in pleading, "that upon a negative and affirmative, the pleading shall conclude *to the country*; but otherwise, with a verification.

To this rule there is the following exception: that when new matter is introduced, the pleading should always conclude *with a verification*. 1 Saund. 103, *n.* (3,) and the authorities there cited. *Whitehead* v. *Buckland*, Stile, 401.— *Cornwallis* v. *Savery*, 2 Burr. 772.—*Vere* v. *Smith*, 2 Lev. 5.—Vent. 121, S. C.— *Sayre* v. *Minns*, Cowp. 575.—*Henderson* v. *Withy*, 2 T. R. 576.—*Calvert* v. *Gordon*, 7 Barn. & Cress. 809.

A traverse may sometimes involve the allegation of new matter; and in such instances the conclusion must be *with a verification* and not *to the country*.

An illustration of this is afforded by a case of very ordinary occurrence, viz. where the action is in debt on a bond conditioned for performance of cove-

26

nants. If the defendant pleads generally, performance of the covenants, and the plaintiff in his replication relies on a breach of them, he must show specially in what that breach consists, for to reply generally that the defendant did not perform them, would be too vague and uncertain. His replication, therefore, setting forth, as it necessarily does, the circumstances of the breach, discloses new matter; and consequently, though it is a direct denial or traverse of the plea, it must not tender issue, but must conclude *with a verification.* *Gainsford* v. *Griffith*, 1 Saund. 54.

So, in another common case, in an action of debt on a bond conditioned to indemnify the plaintiff against the consequences of a certain act, if the defendant pleads *non damnificatus*, and the plaintiff replics alleging a damnification, he must, on the principle just explained, set forth the circumstances, and the new matter thus introduced will make a *verification* necessary. *Richards* v. *Hodges*, 2 Saund. 82.

To these it may be useful to add another example. The plaintiff declared in debt, on a bond conditioned for the performance of certain covenants by the defendant, in his capacity of clerk to the plaintiff; one of which covenants was, to account for all the money that he should receive. The defendant pleaded performance. The plaintiff replied, that on such a day such a sum came to his hands, which he had not accounted for. The defendant rejoined that he *did* account, and in the following manner: that thieves broke into the counting-house and stole the money, and that he acquainted the plaintiff with the fact; and he concluded *with a verification.* The Court held, that though there was an express affirmative that he did account, in contradiction to the statement in the replication, that he did not account, yet that the conclusion with a *verification* was right; for that *new matter* being alleged in the rejoinder, the plaintiff ought to have liberty to come in with a surrejoinder, and answer it by traversing the robbery. *Vere* v. *Smith*, 2 Lev. 5. Vent. 121, S. C."—Stephen on Pl. 233 to 235.