## HOAGLAND v. STATE, EX REL. SCHRIEBER.

[No. 1,433. Filed May 28, 1895. Mandate Modified Dec. 12, 1895.]

OFFICERS.—*Sheriff.—Bastardy Prosecution.—Escape of Prisoner.*— Where a prisoner who is permitted by the sheriff to be at large escapes, it is a voluntary escape in legal contemplation, and the sheriff cannot, after such an escape from custody, upon final process in a bastardy prosecution, retake the prisoner or receive him back, without the plaintiff's consent. *p. 206.*

SAME.—*Sheriff.—Bastardy Prosecution.—Escape of Prisoner.*—Where the sheriff voluntarily permitted the escape of a defendant committed to his charge upon a final process in a bastardy prosecution, the return of the prisoner to custody, or his rearrest, without the consent of the relatrix, will not relieve the sheriff from responding for the escape. *p. 207.*

SAME.—*Sheriff.—Bastardy Prosecution.—Escape of Prisoner.—Insolvency of Defendant.*—In an action against a sheriff for damages for permitting a defendant committed to his charge upon a final process in a bastardy prosecution to escape, the insolvency of the defendant, or his inability to pay or replevy the judgment does not reduce the damages recoverable. *p. 209.*

SAME. — *Sheriff. — Bastardy Prosecution. — Escape of Prisoner.* — A sheriff who permits a defendant in a bastardy prosecution to escape is only required to answer for the judgment rendered against the escaped prisoner, and where the judgment was payable in annual installments, the sheriff is entitled to the same privilege. *p. 210.*

SAME.—*Sheriff.—Bastardy Prosecution.—Escape of Prisoner.—Imprisonment of Officer.*—A sheriff who permits a defendant in a bastardy prosecution to escape is not required to pay or replevy the judgment at the hazard of being committed to jail like the principal defendant. *p. 210.*

From the Jennings Circuit Court. *Reversed.*

*John Overmeyer, F. E. Little* and *Vanosdol & Francisco,* for appellant.

*C. A. Korbly* and *W. O. Ford,* for appellee.

GAVIN, J.—The appellee sued appellant for having voluntarily permitted the escape of a defendant committed to his charge upon a final judgment in a bastardy prosecution.

The questions presented arise upon the exceptions to the conclusions of law on a special finding and a motion to modify the judgment.

From the facts found it appears that the appellee's judgment was duly rendered, and the defendant duly committed to the sheriff's care, and imprisoned by him in the proper jail, on account of his failure to pay or replevy the judgment as required by law.

On three different occasions the sheriff voluntarily permitted the prisoner to depart from the jail and to be and remain out of his sight, custody, and control for several hours on each occasion; once to visit his mother, who was sick, at which time he also went to the barber shop and got shaved, and also voted at the election; once to see his father, who was reported dying; and once to eat Thanksgiving dinner at home. From each of these excursions the prisoner voluntarily returned to the jail, and was again locked up as had been expected and intended by the sheriff. On December 7, 1892, the prisoner was, as had been usual, assisting the sheriff and jailer in carrying ashes out of the jail. While he was in the jail and courtyard about sixty feet from the jail, both the jailer and deputy sheriff in charge went down into the cellar, leaving the prisoner in the courtyard, out of their sight and control. During their absence, and without their knowledge, consent, or expectation, he climbed the fence and ran away, and remained at large until May, 1894, when, after the commencement of this suit, he was rearrested without any process, and voluntarily returned to

the jail, where he remained until the time of trial in the custody of appellant's successor.

All these absences from the jail were without the prior knowledge or consent of the relatrix, who never at any time consented to or ratified any reimprisonment. The prisoner was destitute of property, and unable to pay or replevy the judgment.

Under these facts we are satisfied that, upon well settled principles, the escape was, in contemplation of law, voluntarily permitted, and not merely negligently allowed. The fact that the sheriff did not intend that the prisoner should permanently depart from his control, or that he expected him to return to his custody, or remain where he could again assume control of him, cannot excuse his knowingly and intentionally permitting him to go outside the jail, and outside of his sight and control

The law is settled by both ancient and modern authorities that when the sheriff thus permits a prisoner to be at large there is a voluntary escape in legal contemplation; nor can the sheriff after such an escape from custody under final process retake the prisoner, or receive him back, without the judgment plaintiff's consent.    *Spader* v. *Frost*, 4 Blackf. 190; *Riley* v. *Whittiker*, 49 N. H. 145; *Thompson* v. *Lockwood*, 15 Johns. 255; *Adams* v. *Turrentine*, 8 Ired. 147; *Lansing* v. *Fleet*, 2 Johns. Cas. 3; *Hopkinson* v. *Leeds*, 78 Pa. St. 396; *Stickle* v. *Reed*, 23 Hun 417; *Richardson* v. *Rittenhouse*, 40 N. J. L. 230; *Doane* v. *Baker*, 6 Allen 260; Murfree on Sheriffs, section 190; Mechem on Pub. Off., section 759; 2 Freeman on Exs., section 461.

The cases of *Meehan* v. *State*, 46 N. J. L. 335, and *Wheeler* v. *State, ex rel.*, 39 Kan. 163, are not sufficient to sustain any different doctrine.    In the former it is indeed declared that to constitute a voluntary escape it must be allowed *cum malo animo*, but this is said with reference to a case where the sheriff discharged the prisoner in good faith, under an order of court, believing it to be valid.    In the lat-

ter case the prisoner was all the time accompanied by an officer. In both radically different principles control from those which should govern the one in hand, where the sheriff voluntarily permitted the prisoner to go out of the jail and out of his sight and control, not trusting to his own power of keeping him, but leaving it to the prisoner's honor and volition to return to or remain in custody.

There are some emergencies which have been declared a sufficient excuse for a prisoner's temporary liberty, but we have not to deal with these in this instance. It has also been adjudged that when there has been a voluntary escape from final process, and suit brought by the execution plaintiff against the sheriff for such escape, the plaintiff cannot require the recapture of the prisoner, nor is the sheriff permitted to rearrest him until he has paid the judgment. *Ex Parte Voltz,* 37 Ind. 175, 237; *McElroy* v. *Mancius,* 13 Johns. 121; *Littlefield* v. *Brown,* 1 Wend. 398.

In any view which we may, under the circumstances of this case, take of the law, the return of the prisoner to custody, or his rearrest, without the consent of relatrix, did not relieve the sheriff from responding for the escape. The dedefendant has, under the authorities, been in jail since his return, not by virtue of the power of the law, but of his own volition.

It is abundantly established by authority that there is a broad distinction as to the results flowing from escapes from *mesne* and from final process. Mechem on Pub. Off., section 759; Gwynne on Sheriffs 410; Murfree on Sheriffs, section 196; *Richardson* v. *Rittenhouse,* 40 N. J. L. 230; *Atkesson* v. *Matteson,* 2 T. R. 172.

The doctrine that, as a general rule, the sheriff may retake a prisoner escaped from *mesne* process, but cannot retake one voluntarily permitted to escape from final process, seems to be recognized by appellant's counsel; but the position assumed by some of them seems to be that, by the authority of *Lakin* v. *State, ex rel.,* 89 Ind. 68, the distinction between

escapes from *mesne* and final process has, in bastardy prosecutions, been overthrown; that by *State, ex rel.,* v. *Newcomer,* 109 Ind. 243, and *State, ex rel.,* v. *Caldwell,* 115 Ind. 6, it has been determined that where the escape has been from the *mesne* process in such prosecutions, the defendant may rightly be rearrested, and held under the judgment rendered in his absence, and that such arrest may be pleaded by the sheriff as to all except costs and attorney's fees. Therefore they argue, there being no difference in the rules of law applicable to the escapes from the two classes of process, the rearrest being pleadable in the one may also be set up in the other. The decision in the Lakin case, however, cannot be regarded as going so far as is claimed by counsel. Therefore the premise failing, the conclusion also must fail.

It is true the learned judge does there say that he can see no distinction, on principle, between the two classes of arrest; but the tendency and general drift of his argument is not toward placing them upon an equality, by reducing the stringency of the law as applied to escapes from final process, but by raising the standard of the sheriff's duty as to prisoners held under *mesne* process. In the final determination of the cause, however, the court expressly refuses to decide that the same rule governs in escapes from both *mesne* and final process. In the cases in 109 Ind. and 115 Ind., the Supreme Court does not, by reason of the authority of *Lucas* v. *Hawkins,* 102 Ind. 64, which is based upon the peculiar provisions of our statute, section 986 R. S. 1881, section 998 Burns 1894, carry out the reasoning of the court in the Lakin case, and it fails to apply to an escape from *mesne* process the rule governing where the escape is from final process. These two cases holding that a rearrest may lawfully follow after judgment where the escape was from custody under *mesne* process, will not authorize us to overthrow the thoroughly established and well recognized law that plaintiff's right of action for the debt, by reason of the defendant's escape from final process, voluntarily permitted,

cannot be affected by the subsequent return of the prisoner without her consent.

This action is to enforce the statutory liability given by Stat. Westm. 2 c., 11 (13 Edw. 1), and 1 Rich. 2, c. 12 as adjudged by repeated decisions of our Supreme Court, and which these decisions declare to be in force in Indiana. The insolvency of the defendant, or his inability to pay or replevy the judgment, does not reduce the damages recoverable by the plaintiff, which are the entire debt. *Gwinn* v. *Hubbard,* 3 Blackf. 14; *Hall* v. *Johnson,* 3 Blackf. 363; *State, ex rel.,* v. *Johnson,* 1 Ind. 158; *State, ex rel.,* v. *Hamilton,* 33 Ind. 502; *State, ex rel.,* v. *Mullen,* 50 Ind. 598; *Lakin* v. *State, ex rel.,* 89 Ind. 68.

In *State, ex rel.,* v. *Newcomer,* 109 Ind. 243, the learned judge seems to have understood that, by the Hamilton and other cases, it is decided that in actions on the official bond the sheriff is liable as in debt under these statutes. A careful examination of these authorities will disclose, we think, that they do not so adjudge. They simply assert that in actions against the sheriff, individually, he could be held liable under the statutes, while in *State, ex rel.,* v. *Johnson, supra,* it was explicitly decided that in actions on the bond, the liability was not as in debt under the statutes, but as on the case at common law. In some respects the remedies afforded by resort to the common law and statute liabilities are different, although probably not materially so where the escape has been voluntarily permitted. Notwithstanding the antiquity of these statutes, and their obsoleteness in many respects, as applied to our institutions and present civilization, we cannot refuse in appropriate cases to apply them, nor reject the construction placed thereon by the courts of England, and by our own Supreme Court at an early day, and subsequently approved in so many decisions.

The statute upon which appellant seems to rely does not, in our judgment, afford him any relief, or support his posi-

tion.    By its terms the right of reducing the damages by
recapture was limited to violent escapes and to recaptures
made within three months from such escape.    Manifestly,
this could not be made to include a recapture made after a
voluntary escape, and more than a year subsequent to the
escape.    The fact that the enactments of our own legislature
have somewhat modified the rigor of the law as formerly de-
clared, but have not interfered with other well recognized
rules, would indicate that it was expected these latter would
continue to be enforced.

The judgment in the bastardy proceeding was for $500,
payable in annual installments.    The judgment in this ac-
tion was for $500 and costs, payable absolutely and in
*praesente.*    To this we are of opinion the appellee was not
entitled.  ʼ No rule of law or equity requires the sheriff to do
more than answer for the original judgment.    He should
have the same benefit from the installments as the judgment
defendant.    Moreover, there is an additional reason why the
sheriff should not be held absolutely bound for the instant
payment of the entire sum.    By statute, in the event of the
death of the child, the court may make a proper reduction
from those sums not yet matured.    This is a right of which
the sheriff should not be deprived.    The sheriff is not, as sug-
gested by counsel, to be called on to pay or replevy at the
hazard of being committed to jail like the principal defend-
ant.    It is sufficient answer to this proposition to say that
the law does not so provide.

The judgment is therefore reversed at appellee's costs, with
instructions to the trial court to render judgment in ap-
pellee's favor for the amount of the original debt, with inter-
est on matured installments from the time of the finding, giv-
ing the appellant the benefit of the installment provisions
contained in the original judgment, and with the further pro-
vision that a satisfaction of the original judgment shall oper-
ate as a satisfaction of the one rendered herein, save as to
costs.

## ON MOTION TO MODIFY MANDATE.

GAVIN, C. J.—Upon further consideration the mandate in this cause is modified so as to read as follows: The judgment is therefore reversed, in part, as hereinafter specified, at appellee's cost, with instructions to the trial court to sustain appellant's motion, filed in the court below, to modify the judgment in appellee's favor so that the appellant shall have the benefit of the installment provisions contained in the original judgment, and that the said several installments shall bear interest from the time of their maturity, respectively, until paid, and to further order that a satisfaction of the original judgment shall operate as a satisfaction of the one rendered herein, save as to costs. And, with the exception of the modification herein ordered, the judgment below is affirmed.