## REMBERT and HALE, Adm'rs, v. BROWN.

1. It is competent to ask a witness, who professes to know the number of slaves, mules, &c. employed on a plantation, how much corn *per month*, it would require to supply the wants of the plantation.

2. The object being to impeach a note for fraud, because the maker was a man of imbecile intellect, impaired by long habits of intemperance, a witness cannot be asked, *whether he was a man of strong or weak intellect*, but the facts showing the grade of his intellect, should be proved. Nor can a witness be permitted to state, that he was well acquainted with the party, and that such were his habits and mental incapacity, that he was very liable to be imposed on in any settlement he might undertake to make, especially when under the influence of ardent spirits, which was almost always the case.

3. A book of accounts kept by the plaintiff, who was the overseer of the defendant's intestate, and in which he entered the receipts of money, and disbursements of the plantation, in which there were some figures made with a pencil, by the defendant's intestate, was not evidence further than to establish the facts indicated by the pencil writing, and it was error to suffer the book, without explanation, to go to the jury as evidence.

4. It is not allowable to inquire of a witness, *whether a person with whom the intestate was unacquainted, or in whom he did not have confidence, could, or could not, take advantage of him in a trade.*

5. The declarations of one, that he had sold his crop of cotton to the plaintiff, made to the witness, who saw him delivering the cotton, are admissible to prove the fact of the sale, though it might be insufficient to prove the title of the seller to the cotton.

Writ of Error to the Circuit Court of Dallas. Before the Hon. E. Pickens.

Assumpsit by the defendant in error. All the questions presented for revision, arise on a bill of exceptions, reserved at the trial by the plaintiffs in error.

The plaintiff produced, and read to the jury, the note declared on, and also claimed for a quantity of corn furnished the plantation of defendant's intestate, in the year 1840, and his wages as overseer in the year 1841. It was in evidence that Middleton G. Woods, and William C. Woods, inherited

Rembert and Hale, adm'rs, v. Brown.

a large fortune from their father, and were the only heirs. That they held their estate, real and personal, jointly, and carried on a large plantation, on which were some sixty or seventy hands. That they carried on a blacksmith shop on the plantation, on joint account, worked by their slaves, and that it did a large and lucrative business, working for the public. That M. G. Woods died in August, 1839, after a lingering illness. That W. C. Woods was his only heir and distributee, he having died intestate, and that he died in October, 1841.

The plaintiff commenced for the Woods', as overseer, in 1834, and continued so to act until the death of W. C. Woods, receiving for his wages the first year $400, the second $500, and afterwards $600 per annum, with certain privileges, estimated to be worth several hundred dollars more. That the Woods' lived at Selma, forty miles from the plantation, which they visited two or three times a-year, and that the plaintiff had entire control of the plantation and business, including the blacksmith shop, and in this way received, whilst the plantation and shop were under his management, several thousand dollars. It was proved that the plaintiff had said, that his wages were to be paid for by the collections, and that more was collected than was necessary to pay his wages.

The defendants also offered evidence tending to show, that the deceased was imbecile, and weak naturally, and from long continued habits of intemperance, and had spells of *mania a potu*.

The plaintiff, to establish his claim for corn furnished the plantation of defendant's intestate, and to show the quantity furnished during the year 1840, proposed to ask a witness, who stated he lived near the plantation, and believed he knew near about the number of hands, horses and mules, employed on the plantation, "how much corn per month it would require to supply the wants of said plantation." To this question the defendants objected, but their objection was overruled.

The defendants proposed to ask a witness, not a physician, but one who stated he had known the intestate intimately from his childhood, whether the intestate was a man of

46

weak, or strong intellect; to which the plaintiff objected, and the court sustained the objection.

The defendants introduced the deposition of one Robert Nance, who stated, that he was well acquainted with the intestate, lived near him, and saw him very frequently the latter years of his life; and among other things, stated "that such were the habits of the said William C. Woods, and such his mental incapacity, that he was very liable to be imposed on, in any settlement he might undertake to make, especially so, when under the influence of ardent spirits, which was almost always the case." This portion of the deposition was objected to by the plaintiff, as illegal, and on his motion ruled out.

The defendants, to show that the plaintiff had received considerable sums of money from the blacksmith's shop, whilst overseer, besides introducing the testimony of witnesses to prove payments to him, introduced as evidence, several account books, which were kept by the plaintiff in his hand writing, and ran through all the years during which plaintiff was overseer. In these books a considerable number of accounts were entered, during each year, and under the accounts, or most of them, were receipts signed by the plaintiff, showing the accounts had been paid to him. In this way it was contended, he had received more than enough to pay his wages, besides what he received for corn, &c. The plaintiff also offered in evidence another bound book, containing a considerable number of pages, running through the several years of his employment on said plantation, professing on the one side to show what moneys he had received, and on the other how the money had been disposed of by him. All these entries in this book, so far as appeared, were in the hand writing of the plaintiff. There was no evidence that either M. G. Woods, or defendant's intestate, had ever seen, or recognized the entries in this book, which extended from 1834 to 1841, further than this; in certain parts of the book, prior to and including the year 1838, were figures in pencil, which a witness professing to be well acquainted with the hand writing of M. G. Woods, stated as his belief were his figures. There were figures in ink, which the witness did not recognize, nor was it proved by whom they

were made. These figures in ink gave the addition of the pages. The figures in pencil seemed as if made, for the purpose of ascertaining the balances due from the plaintiff according to the book. None of the figures, so far as known, were those of intestate, but subsequent to the year 1838, were other figures in pencil, part of them proved to be those of one William Hale, who sometimes transacted business for said intestate. Hale was examined as a witness, and testified that this book had been shown to him in the lifetime of the intestate, and that at the request of plaintiff, on one occasion he cast up some of the accounts, and at that time made certain figures in pencil, but this was not done for the purpose of settling, he having no authority to settle with the plaintiff, and the intestate not being present. On this proof, the plaintiff proposed to submit this book to the jury, to which the defendants objected. The court permitted it to go to the jury as evidence, so far as they might be satisfied from the proof in relation to the figures, the entries had received the sanction and recognition of M. G. Woods or the intestate, or their agent.

The plaintiff proposed to ask a witness, not a professional man, could, or could not, a person with whom W. C. Woods was not acquainted, or in whom he did not have confidence, take advantage of him in a trade. To this the defendants objected, but the question was permitted to be put, and the witness answered in the negative.

The defendants proved by a witness, that in December, 1840, the plaintiff sold and delivered him twenty-four bales of cotton, worth about $1,100; that the cotton was delivered at a landing to which the cotton of intestate was usually hauled for shipment. The plaintiff then introduced a witness, who stated that he was present, when one Fike was delivering some cotton in the seed to plaintiff; that he saw one wagon load taken away by plaintiff. He did not hear any contract, or trade spoken of, or made by Fike with plaintiff, but on witness asking Fike what they were about, he remarked he had sold his crop to plaintiff. To so much of this evidence as related to the declaration of Fike, the defendants objected, but the objection was overruled.

These several matters were excepted to by the defendants, and are now assigned as error.

LAPSLEY & HUNTER, for the plaintiffs in error, made the following points:

1. That there was error in admitting the opinion of the witness as to how much corn per month it would require for the wants of intestate's plantation. Rascoe & Brantley v. Willis, 5 Ala. Rep. 38; Wood's adm'rs v. Brown, 11 Ala. R. 87; Grant v. Cole & Co. 8 Id. 521; Peterborough v. Jeffrey, 6 N. H. R. 462; Rochester v. Chester, 3 Id. 349; Gibson v. Williams, 4 Wendell's Rep. 320; 5 Johnson's Rep. 225; Farmers' and Manuf. Bank v. Whinfield, 24 Wend. R. 426. The matter was susceptible of proof of a much more conclusive nature. Hunter v. Glenn, 1 Bailey's S. C. Rep. 542; 1 Greenleaf Ev. 157, ch. 4, § 82.

2. That there was error in refusing to permit defendants in the circuit court, under the facts stated, to ask the witness, whether intestate was a man of strong or weak intellect.

3. That there was error in ruling out that portion of Nance's deposition which was rejected. It is contended, that the whole of the rejected testimony under the facts stated by the witness, was competent. Gentry v. McMinnis, 3 Dana, 382. But certainly there was error in excluding the material and important fact stated, that intestate was almost always under the influence of ardent spirits. We think the defendants in the circuit court were at all events entitled to the benefit of a fact like this proved by a witness, whose opportunity of knowing what he stated, had been so good. Hrabousky v. Herbert, 4 Ala. R. 265; Borland v. Walker, 7 Id. 273; Bradford v. Haggerty, 11 Id. 698.

4. There was error in permitting the plaintiff below to introduce the book offered by him as evidence, under the circumstances shown. It is contended, that this book was not legal evidence for the plaintiff in any way, or for any purpose under the accompanying circumstances. But if this book could be regarded in any light as proper evidence for the plaintiff, being written evidence it was the duty of the court to construe it. In permitting the book to go to the jury, and leaving it to them to determine, first, the competence of the

Rembert and Hale, adm'rs, v. Brown.

evidence, and then its legal effect, we think there was beyond all question error. Sorrell's Ex'rs v. Sorrell, 5 Ala. R. 245; 1 Greenl. Ev. § 49, part 2; 3 Phil. Ev. 1420, and cases cited in notes; Fowle v. Bigelow, 10 Mass. R. 380.— Where the written evidence is combined with extrinsic evidence, so that they cannot be separated, the whole will go together to the jury. But in such case, " the court is to direct the effect of that evidence, and what shall be the construction if certain facts are proved." Fowle v. Bigelow, 10 Mass. R. 380; 24 Wend. 428; 1 Bailey S. C. Rep. 542.

5. That there was error in permitting an unprofessional witness to give his opinion as to whether the intestate could be imposed on in a trade. Andrews & Bros. v. Jones, 10 Ala. Rep. 460; 6 N. H. Rep. 462; 8 Mass. 371; 9 Ib. 225; 5 Ala. R. 243; 4 Wend. 326; 2 Phil. Ev. 759, and note, 290; McCurry v. Hooper, at this term.

6. That there was error in permitting the declaration of Fike in relation to the sale or cotton to Brown to go to the jury under the circumstances shown. This testimony was not only objectionable as hearsay, but also as irrelevant.— Penniman v. Patchin, 6 Verm. 325; 2 U. S. Dig. 281, § 1776; 5 Ala. R. 41; 8 Ib. 521; 1 Bailey S. C. 542.

WATTS, for the defendant in error.

This is the second time this case has been before this court. See 11 Ala. 87. If there be any error in the record, it is clear that plaintiffs have not been injured thereby, and this court will not reverse. It is a case, as shown by the bill of exceptions, peculiarly fitted for the decision of a jury, and under such circumstances this court will not reverse unless it is manifest that injury has resulted to plaintiffs in error. See this case in 11 Ala. 87.

2. As to the first asssignment of error. The question asked was clearly admissible; the answer was not a mere matter of opinion, but was the proof of a circumstance from which the jury, in connection with the other proof before them, might infer the amount of corn furnished by plaintiff below to defendant's intestate. See Kellogg v. Krawn, 14 Serg. & R. 137; Greenl. Ev. 488, § 440; Bell v. Pharr et al. 7 Ala. 807.

3. As to the 2d assignment of error. The witness was not a professional man, and could only state facts. 5 Ala. 241. As a witness cannot tell what another thinks, he cannot tell how another thinks. See P. & M. Bank v. Borland, 5 Ala. 531. No injury resulted however, if erroneous, because stronger proof to same effect. See Pinkston and wife v. Green and wife, 9 Ala. 19.

4. The ruling out Nance's testimony was not error. See State v. Brinea, 5 Ala. 531. It is not shown that Nance was a physician, or stood in another relation, which entitled him to his opinion. See 2 Por. 29.

5. The court did not err in permitting the books to go to the jury with the instructions given. Those parts only were to be weighed, which were sanctioned by the Woods or their agent. Is not this question settled in this case, 11 Ala. 94?

6. The opinion of the witness was in reply to similar testimony introduced by defendants, and no injury resulted.

7. The court did not err in permitting Fikes's declarations under the circumstances stated. See Downman v. Frow, 6 Ala. 879.

COLLIER, C. J.—1. In *general* it is not allowable for a witness to state his opinions, but it is *sometimes* permissible for him to testify to the result of his judgment and observation upon conceded facts. Thus, where a witness stated, that from his knowledge of the debtor's circumstances, the latter was able to pay a certain amount, and that during a certain time after his escape, he must have spent from $800 to $1000, as deponent believed, the testimony was considered admissible—not being an abstract opinion merely. Griffin v. Brown, 2 Pick. Rep. 304. In questions of the value of property, witnesses have often been permitted to testify to their opinions, as there is no unerring and certain standard in such cases, to which reference can always be had. Kellogg v. Krauser, 14 Serg. & R. Rep. 137; Rochester v. Chester, 3 N. Hamp. R. 349; Morse v. Connecticut, 6 Conn. R. 9; 1 Greenl. Ev. 488, *et seq.;* Chenault v. Walker, at the last term.

The inquiry of the witness, "how much corn *per month* it would require to supply the wants of said plantation," was

Rembert and Hale, adm'rs, v. Brown.

preceded by a statement that he lived near the plantation of the defendant's intestate, and believed he knew about the number of hands, horses and mules employed thereon. If the plaintiff furnished corn for a definite time, it is difficult to perceive how he could have shown the quantity by more satisfactory proof, unless there had been some witness to its delivery; and it cannot be inferred that he could have adduced such evidence, as he had the sole management of the plantation—the intestate giving himself but little concern about it, and rarely visiting it.

If the witness had stated how much corn it required for the subsistence of a single slave, horse or mule, there could certainly have been no objection to the competency of such evidence. Upon principle, there can be no difference between such testimony and that which a direct answer to the question would have elicited; so that if the witness could say what precise quantity one slave, horse or mule would probably consume within a given period, he might certainly state how much would be required for a greater number. This would be a mere matter of arithmetical calculation, about which there could be no mistake.

2. One of the grounds of the defence on the trial, as indicated by the bill of exceptions, was, that the note declared on was without consideration, or was obtained by the plaintiff by fraud or other undue means, and to sustain this defence the defendants, among other things, proposed to show that their intestate was a man of imbecile intellect, impaired by a long continued habit of intemperance, which he practised from boyhood up to the period of his last sickness. The question is, whether for this purpose, it was allowable to inquire of a witness " whether the intestate was a man of strong or weak intellect?" We have already said, that witnesses should depose to facts, and as a general rule cannot be allowed to state their opinions or mental conclusions *merely.* Now although the question in form, seems to contemplate a direct and positive response, yet an answer to it must of necessity be the result of the witness's observation, or reasoning from certain premises not disclosed, and we cannot therefore think it was admissible. The witness might have stated the facts and circumstances which tended to indicate the

grade of the intestate's intellect, as, his general demeanor, the character of his conversation, his usual employment, and his habits generally, so far as these would enable a jury to form an estimate of his powers of mind. Crowwell v. Kerr et al. 3 Dev. L. Rep. 355; 2 Phil. Ev. C. & H's Notes, 759, *et seq.;* Roberts v. Trawick, 13 Ala. 68.

3. The statement in the deposition of the witness, Nance, that he was well acquainted with the defendant's intestate, lived near him, and saw him frequently from 1836 to the time of his death, in 1841, "and that such were the habits, and such the mental incapacity of the intestate, that he was very liable to be imposed on in any settlement he might undertake to make; especially so when under the influence of ardent spirits, which was almost always the case," was rightfully excluded. Here the witness assumed to pass judgment upon the intestate's habits and powers of mind—to affirm that the former were irregular and objectionable, and that the latter was imbecile; that the effect of these causes combined, made him the dupe of other men, who might readily impose on him at all times; and especially when intoxicated. Instead of stating his premises in general terms, and thus summarily deducing a conclusion, the state of the intestate's habits should have been specially narrated, and the manifestations of imbecility particularly pointed out, that the jury might draw their own conclusions, or at least be able to determine whether that of the witness was warranted by the facts. This conclusion seems to result from what we said upon the preceding point.

4. We think the book kept by the plaintiff, and professedly indicating the state of accounts between himself and his employers, M. G. Woods and the plaintiff, was inadmissible *to the extent and under the circumstances which it was allowed to go to the jury as evidence.* If it had been received to establish the facts indicated by the writing or figures in M. G. Woods's hand-writing, made with a pencil, there could have been no objection to its admissibility. The relevant and irrelevant testimony was so commingled, that the only course was to allow the entire book to be taken by the jury in their retirement, with such special instructions as would have prevented them from doing injustice to the defendants. See

Fowle v. Bigelow, 10 Mass. Rep. 380. But instead of thus restricting the effect of the evidence, the court permitted the book to go to the jury, not only so far as they might be satisfied that the figures in M. G. W's hand-writing were intended, or did show his approval of certain entries, but also to the extent to which they were satified the entries had received the sanction of the intestate, or an agent of either of them? Now there was no proof that the plaintiff's book of entries had ever been admitted by the intestate to be correct in any particular, though there was an effort to show that this had been done by one who occasionally acted as the intestate's agent, and actually made figures on the book. The admission of the book, founded upon the idea that the intestate had personally, or by agent admitted its correctness in some respects, could not in point of law have had any beneficial effect in the adjustment of the matters in controversy. The only safe course was for the jury upon that hypothesis to have disregarded it, and looked alone to the figures in the handwriting of M. G. W.; otherwise they would most probably have been misled. In the F. & M. Bank v. Whinfield, 24 Wend. Rep. 419, it was held to be a fatal error to permit irrelevant testimony to go to the jury, if the chances are equal, that it may have had an injurious tendency on the minds of the jurors; when it is *perfectly obvious* that no prejudicial consequences could have resulted from its admission, perhaps the error would not warrant a reversal of the judgment.

5. It was not allowable for the plaintiff to inquire of his witness, whether *a person with whom the intestate was unacquainted, or in whom he did not have confidence could, or could not take advantage of him in a trade.* This question calls upon the witness for an expression of his opinion, and not the disclosure of special facts, which would enable the jury to rest a conclusion upon the points; and when too it is susceptible of more definite proof. What we have said upon the second and third points in the cause, is quite sufficient to manifest the error in the ruling of the court upon this.

If the defendants had invited such an irregular examina-

tion of witnesses, by testimony introduced by themselves, then perhaps they should not be allowed to object to it; but the inquiries on their part, in which opinions were elicited, were addressed to professional men, and for any thing appearing to the contrary, came within the exception applying to such witnesses.

6. We can perceive no objection to the declarations of Fike, under the circumstances in which they were made. The witness observed him delivering some cotton to the plaintiff, and inquired "what they were about," to which Fike remarked, "that he had sold his crop to the plaintiff." Witness saw the cotton unginned, supposed it would make about ten bales, and a part of it was delivered in his presence. The declaration was admissible as part of the act done, viz: the delivery of the cotton. It was for the jury to weigh and determine the influence to which it was entitled. It was perhaps altogether insufficient to establish the title of Fike to the cotton, and the bill of exceptions does not show that it was offered with that view. We merely determine, that it was admissible as tending to establish a sale.

This view is decisive of all the points made upon the record, and sufficiently indicates the error of the circuit court, in several of the questions adjudged. Without therefore stopping to recapitulate, we will only add, that the judgment is reversed and the cause remanded.