## BARNES vs. INGALLS.

[ACTION ON PROMISSORY NOTE, AND COMMON COUNTS.]

1. *Competency of witness as expert; jndicial knowledge of business.*—An ambrotypist and daguerrotypist, whose business, as the courts must judicially know, is closely connected with that of the photograph painter, is competent to give his opinion, as an expert, on the question whether photographs are well executed; especially where it appears that he has also been employed in a photograph gallery, and has practiced, to a limited extent, the art of painting photographs.

2. *Proof of value of services as photograph painter.*—The number of photographs, of fair quality, which a painter can execute in a month, if constantly employed, is one of the criteria by which to determine the value of his services by the month to his employer.

3. *Objection to question and answer.*—Where a witness states, in reply to a question which is objected to, that "he does not know," and then proceeds to relate matters which, though not responsive, are apparently suggested by the question, the objection to the question does not cover the independent matter thus stated; nor is that matter covered by a subsequent objection to "all the testimony of the witness," when it appears that a portion of his testimony was competent evidence.

4. *Opinion of witness as to merits of photograph.*—Although experts only may be competent, as witnesses, to testify whether or not a photograph is well executed; yet, to enable a person to determine whether the picture resembles the original, requires no special skill in, or knowledge of the photographic art; and on that question, consequently, a person for whom such a picture has been taken, although possessing no special skill or knowledge of the art, may testify that the picture was a good likeness.

5. *Custom among artisans as to working hours of journeymen; proof and validity of.*—Proof of the general custom among the mechanics and artizans in a city, by which journeymen and employees are required to work for their employers only a certain number of hours per day, and are allowed the privilege of working for themselves at other times, is competent evidence to be submitted to the jury, as tending to show the existence of such custom among daguerrotypists, ambrotypists, and photograph painters, whose business belongs to the mechanical arts; and such custom, if proved to exist, can not be pronounced by the courts unreasonable, contrary to public policy, or otherwise illegal.

APPEAL from the City Court of Mobile.

Tried before the Hon. HENRY CHAMBERLAIN.

THIS action was brought by Gardner Ingalls, against Chauncey Barnes, and was commenced on the 15th May, 1860. The complaint contained five counts. The first and second counts were founded on a promissory note for five hundred dollars, executed by the defendant, dated the 6th August, 1859, and payable to the plaintiff, or order, on the "16th August inst." The third count claimed four hundred and fifty dollars, for services rendered by the plaintiff as a portrait and photograph painter, under a special contract with the defendant, from the 16th August, 1859, to the 1st January, 1860, at the stipulated price of one hundred dollars per month. The fourth was the common count for work and labor done, and the fifth the common count on an account stated. The defendant pleaded the general issue, in short by consent, to the entire complaint, and four special pleas. The first special plea alleged, that the note declared on was given for a balance due to the plaintiff, on account of services rendered by him, under a special contract with the defendant, as a portrait and photograph painter; that one of the stipulations of the contract was, that the plaintiff should, during the time he was in the defendant's employment, give his entire and undivided attention to the defendant's business, and should not work for other persons; that the plaintiff violated this stipulation of the contract, and that the note was therefore without consideration and void. The second special plea set up the same matters as a defense to the third and fourth counts. The third plea, which was pleaded to all the counts, alleged the same matters, and claimed a recoupment of the damages which the defendant had sustained by reason of the plaintiff's violation of the contract; and the fifth was a special plea of set-off on account of the damages caused by the alleged violation of the contract by the plaintiff. To the several special pleas the plaintiff filed a special replication, denying the validity of the alleged contract, and averring that it was void under the statute of frauds, because, by its terms, as alleged, it was not to be performed within one year. No objection, so far as the record discloses, was made to any of the pleadings, and the cause was submitted to the jury on issue joined.

"On the trial," as the bill of exceptions states, "the plaintiff read in evidence the note described in the complaint, and adduced evidence tending to show that, for four and a half months, he worked in the defendant's photograph and portrait gallery in Mobile, as a painter of such photographs and portraits, which was proved to be his profession; after which, he introduced several witnesses, whose testimony tended to prove the value of his services in that capacity, per week, month, &c.; but did not show that there was any special contract between the parties in regard to that service.   One Parlow, a witness for plaintiff, stated, that he was by occupation an ambrotypist and daguerrotypist; that he had been in Mobile about two months, engaged in that business, and had worked there with one Stanton, with whom the plaintiff was working at the same time.   Said witness was asked by the defendant's counsel, whether he was a painter of likenesses such as the plaintiff professed to take; to which he replied that he was not, but that he had, at times, painted small ones, and some such since he had been in Mobile, but had never painted any large ones, though he professed to know something of that business, and of the value of such work, which was intimately connected with his own business.   The defendant objected to the competency of the testimony of this witness, but the court overruled his objection, and he excepted; and the witness was permitted to testify, that he had seen the productions of the plaintiff's pencil while he was working for Stanton, and thought them well executed.   Said witness was asked by the plaintiff, whether the number of paintings, of fair quality, which a photograph painter could execute in a month, when constantly employed, was not one of the criteria by which to judge of the value of his services by the month to his employer; to which question the defendant objected; but the court overruled the objection, and the defendant excepted; and the witness answered in the affirmative.   Plaintiff then asked the witness to state, from what he knew and saw of the *defendant's* (?) work and capacity, how many such pictures plaintiff could paint per month. The defendant objected to this question, and excepted to the overruling of his objection; and the witness then said,·

that he did not know. The witness stated that he knew, however, that the plaintiff, during the six or eight weeks in which he worked at Stanton's gallery, although he did not work all the time, executed or painted eight or ten pictures, which appeared to give satisfaction to the persons for whom they were taken. To all the testimony of this witness the defendant excepted. Exception allowed.

"The plaintiff introduced two witnesses, by name Geary and Roulston, who testified, that certain likenesses had been painted for them by the plaintiff, during the time he was working for the defendant, and that they were well and satisfactorily executed. The defendant asked them, whether they had any knowledge of the art of painting photographs or ambrotypes; to which they replied, that they had no skill therein, but they knew whether a picture was a good likeness, or suited them. The defendant thereupon moved the court to exclude their testimony from the jury, and reserved an exception to the overruling of the objection.

"The defendant introduced one Wright as a witness, who stated, that he had no knowledge of any specific contract between the plaintiff and defendant, under which the former was working for the latter ; that he was himself a daguerrotypist, and was in the employ of the defendant while the plaintiff was working for him; that he remembered a lady called at the defendant's gallery one day during the time, and inquired for 'the man who painted cheap pictures;' that he, supposing plaintiff to be the person meant, called him into the gallery to see the lady, who thereupon applied to him to paint her photograph ; that the plaintiff told her, he was under obligation to paint for no one but the defendant; that the lady said, 'But you promised to paint my photograph ;' and the plaintiff replied, 'That was while I was doing business for myself.' Said witness further stated, that during the whole of those four and a half months there was not work in the defendant's gallery for the plaintiff to do, and that a good deal of the work he had done, was not well done, or had not given satisfaction to the defendant's customers, and the pictures remained in his gallery uncalled for. The defendant introduced evidence, also, to show that the plaintiff, while in his

Barnes v. Ingalls.

employ, had painted photographs for several *outsiders*, or persons who were not customers of the defendant, (about twenty-six in all,) which were worth —— dollars; and that the plaintiff admitted he had received one hundred and eighty dollars for outside work; but it was not stated whether they were all painted after the date of the note sued on, or whether some of them were not painted before.

"The plaintiff introduced one McCord as a witness, (first premising that he thought no evidence had been adduced showing any special contract between the parties,) who testified, that he was an upholsterer and paper-hanger, and had been a mechanic in Mobile for twenty-five years; that he knew what was the custom among the mechanics and artisans in that city, in regard to journeymen and employees working for their employers; that they were required to work a certain number of hours per day, and were permitted to have the rest of the time for thenselves, and to work for themselves during that time, or on Sundays, if they chose to do so, and to receive the benefits of such extra work. Said witness was asked by the defendant, if he knew the custom in photograph galleries; to which he replied, that he had no particular acquaintance with the custom in this regard in photograph and ambrotype galleries, or with that business. Defendant thereupon objected to the testimony of the witness, and moved the court to exclude the same from the jury; which the court refused to do, and the defendant excepted. The plaintiff also introduced one Groves as a witness, who was a merchant-tailor, employed journeymen, and had been a mechanic in Mobile for fifteen or twenty years; who testified, that he knew what the custom in Mobile was with mechanics and artisans; and whose testimony corroborated that of the witness McCord. The defendant also objected to the evidence of this witness, and reserved an exception to the overruling of his objection. Exception allowed.

"The plaintiff then introduced as a witness said Wright, the above-named witness for defendant, who stated that, during the time he and the plaintiff worked for the defendant, the persons employed by the defendant went to work, as a usual habit, at the usual time in the morning, had the ordinary

recess for breakfast and dinner, and worked until near night, but did not work after dark for him. This evidence was excepted to by the defendant, but admitted by the court; and the exception allowed."

The several rulings of the court on the evidence, to which exceptions were reserved, are now assigned as error.

D. C. ANDERSON, for appellant.
CHAS. H. MORSE, contra.

R. W. WALKER, J.—[1.] The witness Parlow was by occupation an ambrotypist and daguerrotypist. His vocation, as he states, and as we judicially know, (*Salomon v. State*, 28 Ala. 88,) is intimately connected with that of the photographic painter. The two processes, sometimes followed as separate pursuits, sometimes jointly prosecuted by the same individual, are frequently, if not usually, carried on in the same establishment, as branches of the same business, and made to co-operate as mutual auxiliaries in the production of a joint result. This witness had been employed in at least one gallery where photographic paintings, as well as ambrotypes, were executed, and had thus enjoyed peculiar opportunities for seeing such work performed, and for examining paintings of that description. Not only so, but he had at times practiced, to some limited extent, the art of painting photographic likenesses, though not such as plaintiff professed to take; the difference being, as we infer, that the plaintiff painted large portraits, while the pictures which the witness had painted were of a smaller size. Moreover, he professed to know something about the business of photographic painting, and of the value of that kind of work. Under these circumstances, the court did not err in permitting him to testify that the pictures of the plaintiff, which he had seen, were well executed.—*Tullis v. Kidd*, 12 Ala. 648; *Dickson v. Barclay*, 22 ib. 370; *McCreary v. Turk*, 29 ib. 244; *Gilmer v. City Council*, 33 ib. 116; *Sikes v. Paine*, 10 Iredell, 280; *Buffum v. Harris*, 5 R. I. 243; *Haskins v. Hamilton Ins. Co.*, 5 Gray, 432; 1 Greenl. Ev. § 440.

[2.] This witness was permitted to testify, that the number

Barnes v. Ingalls.

of paintings, of a fair quality, which a photograph painte r could execute during a month, when constantly employed, was one of the criteria by which to judge of the value of his services to his employer by the month. This was but the statement of a self-evident proposition, th e admission of which in evidence, even if not justifiable on other grounds, would not be considered a reversibl e error, as it could not possibly have prejudiced the defendan t

[3.] The next exception was to a question calling for an answer which the witness declined to give ; saying that, as to the matter inquired of, "he did not know." What he proceeded to state, as to the number of paintings executed by the plaintiff, in Stanton's gallery, &c., though suggested perhaps, by the question referred to, must be viewed as independent testimony, not covered by the exception to that question ; and its introduction in evidence should have been separately objected to, and made the subject of a distinct exception. The subsequent exception, "to all the testimony of the witness," was too broad for the purpose, and was properly overruled, because, as we have seen, a part at least of his evidence was competent. No separate exception having been taken to its introduction, the admissibility of the statement as to the number of paintings executed by plaintiff in Stanton's gallery, and that they appeared to give satisfaction, is not a question for us to consider.

[4.] The substance of the testimony of the witnesses Geary and Roulston was, that during the period of plaintiff's engagement with defendant, certain likenesses had been painted 'for them' by the plaintiff, which were well and satisfactorily executed—that is to say, they were good likenesses, and suited them. That this is a fair construction of the evidence is apparent, we think, when the whole of their testimony is viewed together. The meaning of the witnesses, in saying that the paintings were "well and satisfactorily executed," is explained by their subsequent statement that, though having no special skill in ambrotype or photograph pictures, yet " they knew when a picture was a good likeness, or suited them." Adopting this view of the evidence of the witnesses, one of the facts to which

they testified was, that certain portraits, painted for them by the plaintiff, were faithful likenesses. A most important requisite of a good portrait is, that it shall be a correct likeness of the original ; and although only "experts " may be competent to decide whether it is well executed in other respects, the question whether a portrait is *like* the person for whom it was intended, is one which it requires no special skill in, or knowledge of the art of painting, to determine. The immediate family of the person represented, or his most intimate friends, are, indeed, as a general rule, the best judges as to whether the artist has succeeded in achieving a faithful likeness. To eyes sharpened by constant and intimate association with the original, defects will be visible, and points of resemblance will appear, which would escape the observation of the practiced critic. "We should think the painter had finished the likeness of a mother very indifferently, if it did not bring home to her children traits of undefinable expression which had escaped every eye but those of familiar affection." The fact of *likeness*, or resemblance, is one open to the observation of the senses, and no peculiar skill is requisite to qualify one to testify to it. Evidence on such a question stands upon the same footing as evidence of handwriting, the value of property, the identity of an individual, &c.; and we think that the testimony of witnesses, that pictures which the plaintiff, while in the defendant's employment, had executed "for them," were good likenesses, was competent evidence in this case.—See *Ward v. Reynolds,* 32 Ala. 389 ; *Barker v. Coleman,* 35 Ala. 225 ; *Blackman v. Johnson, ib.* 252 ; *Rembert v. Brown,* 14 Ala. 360; 1 Greenl. Ev. § 440 ; 2 Phill. Ev., C. & H. Notes, (Edwards' edit. 1859,) 916, *note.* The objection was to the entire evidence, and having ascertained that a part of it was legal, we need not consider whether the objections to the remaining part of it are well founded.

[5.] In considering the testimony of the witnesses McCord and Groves, we shall notice only such objections to it as have been brought our attention by the appellant's counsel. Those objections are not that proof by legal testimony of a reasonable custom in ambrotype and photograph galleries

would be incompetent evidence in this case, but that the testimony introduced as to the custom among mechanics and artisans was not legal evidence of a custom in ambrotype and photograph galleries, and that, if it was, the custom as proved was unreasonable. The ambrotypist or daguerrotypist, whatever title he may give himself, is rather an artisan, than an artist. His labor is more manual than mental. He works more by rule, than under the inspiration of genius. The process by which he accomplishes his undertaking, is mainly mechanical; and success in his vocation demands, not creative power, but dexterity, contrivance, and the skillful application of fixed rules. He follows an art, but not one of the fine arts; and he alone is an artist, in the appropriate sense of the word, who professes and practices (one of) the latter. The labor performed in an ambrotype and photograph gallery is so largely mechanical—the processes pursued are so regulated by established rules; the results produced depend so much upon mere trained dexterity and skillful manual execution; and there are, in other respects, so many points in common between such an establishment, and those in which the ordinary mechanic arts are pursued, that (without saying that ambrotypists, daguerrotypists, and photographic painters, are alike artisans) we think that evidence of a universal custom among all mechanics and artisans, by which employees and journeymen are required to work for their employers only for a certain number of hours each day, and have the privilege of working for themselves during the remainder of the day, or on Sundays, tends to show the existence of a similar custom in establishments where ambrotypes and photographs are executed; and whenever this latter fact becomes a legitimate subject of inquiry, such evidence may be submitted to the jury, even though the witnesses who testify to the custom "have no particular acquaintance with the customs in this regard in photograph and ambrotype galleries." That would be a circumstance affecting the weight, but not the competency of the evidence.

We do not understand these witnesses as testifying to a custom whereby employees are privileged to work for themselves, either with the materials of their principal, or

13

during the hours when the latter requires their services, or to do any act to undermine his business, or to draw away his customers. We are unable to perceive that the custom to which they testify, is so contrary to reason, or to public policy, as to justify us in pronouncing it illegal.

The testimony of the witness Wright, which forms the subject of the last exception, could not have prejudiced the defendant; nor can we say that it was irrelevant to the matters of defense set up by the defendant, and brought before the jury by the evidence of the same witness, when examined on behalf of the defendant.

Judgment affirmed.

39 202,
108 88

39 202
112 451
113 322

39 202,
117 342

39 202
123 682

39 202
f127 76

39 202
e132 165

39 202
139 200
139 405

39 202
144 475