# Luke *v*. Calhoun County.

*Action by Widow to recover Penalty for Murder of Husband, under Act of Dec. 28th*, 1868.

1. *Judicial notice taken of photography.* — The courts will judicially notice the art of photography, the mechanical and chemical process employed, the scientific principles on which they are based, and their results.

2. *Personal identity ; when photograph admissible evidence to show.* — A photograph, shown by the widow to be a good likeness of her husband, and an indorsement thereon, in his handwriting, of his name, date, and place of its execution, are admissible evidence to show the identity of the husband and a murdered man, when offered in connection with the testimony of the photographer, that it was the likeness of a man of the same name as the husband, taken at the place and about the time indorsed on it, and the further evidence of a witness, who saw deceased shortly before and after death, that it was a good likeness.

3. *"Act to suppress murder, lynching, &c., applies to aliens as well as citizens.* — Statutes passed for the security and protection of life, in the absence of clear and unexceptionable language forcing a contrary conclusion, will be held to apply as well to aliens and mere sojourners as to citizens. The fact that the person murdered and the widow, or next of kin, were aliens, is no defence to a recovery under the " Act to suppress murder, lynching, and assaults and batteries," approved Dec. 28th, 1868.

4. *Written evidence ; authority of court to charge upon effect of.* — The authority of the court to charge upon the effect of evidence consisting wholly of depositions, is no greater than where the testimony is delivered orally.

5. *Same ; charge upon effect of, when erroneous.* — Although the jury believe evidence, which is without conflict and tends strongly to prove the plaintiff's case, they should not be instructed to find for him, if they are authorized to make any deduction or inference which is fatal to his right of recovery.

6. *Repeal of statute on which action was based pending appeal ; practice on reversal.* — The court declined to pass upon the effect of a repeal of the statute, on which the action was based, during the pendency of the appeal, and on reversal, remanded the cause.

[Luke v. Calhoun County.]

APPEAL from Circuit Court of Calhoun.

Tried before Hon. W. L. WHITLOCK.

Appellant's husband, William C. Luke, *alias* William McAdams Luke, having been murdered by disguised persons, on the 12th of July, 1870, in Calhoun county, Alabama, she brought this suit against the county, under the provisions of the " Act to suppress murder, lynching, and assaults and batteries," approved Dec. 28th, 1868, to recover $5,000, the penalty given by the statute against the county.

Appellant never resided in the United States. She and her husband were subjects of Great Britain, and residents of Canada, which country he left to come to this State a few months before his death.

During the progress of the trial, the plaintiff, for the purpose of showing that the murdered man was her husband, offered in evidence a photographic likeness, which she testified was sent to her by her husband from Alabama a short time before his death, and that it was a good likeness of him ; that the words, " *Taken Jacksonville, Ala., March* 19, 1870," which appeared on it, were in his handwriting. It was also shown by the photographer, whose work it was, that it was the likeness of a man bearing the name of Luke, and was taken at Jacksonville, in this State, about the 20th of March, 1870.

It was further shown by one Smith, deputy sheriff of the county, from whose custody the murdered man was taken by the persons in disguise, who saw the body a few hours after the murder, that it was a good likeness of the murdered man, who bore the name of Luke. Other witnesses testified that the murdered man went by the name of William C. Luke. In connection with the foregoing evidence, she offered the photograph and the indorsement thereon as evidence, but, on the objection of the appellee, the court excluded them, and the appellant duly excepted.

The plaintiff also introduced testimony showing her marriage in 1858 with William C. Luke, and that a man known by that name was murdered in Calhoun county, by armed men in disguise, about the 12th day of July, 1870. All the testimony was introduced by plaintiff, and consisted of the depositions of several witnesses, and a written statement of facts, to which it was agreed certain absent witnesses would testify.

The plaintiff requested the following written charges : —

1. " If the jury believe, from the evidence, that William C. Luke was murdered in the county, in the month of July, or assassinated by any outlaw, or by any person or persons in disguise, or by a mob, or for past or present party affiliation or political opinion, and that the plaintiff is the widow of said Luke, she is entitled to recover, and the form of your verdict will be : ' We the

[Luke v. Calhoun County.]

jury find for the plaintiff, and assess her damages at five thousand dollars.' And if the murder or assassination was done by a person or persons in disguise, this is sufficient; or if it was done for past or present party affiliation, or political opinion, this is sufficient."

3. " The evidence being wholly in writing, the jury are instructed, if they believe the evidence, they must find for the plaintiff."

The court refused to give either of these charges and the appellant duly excepted.

The court, at the request of the defendant, gave the following charges, to which the appellant duly excepted: —

1. " If the jury believe from the evidence that plaintiff and her deceased husband, for whose death plaintiff sues, were both aliens, not citizens of Alabama or of the United States, the plaintiff cannot recover in this action."

2. " That allegiance and protection are reciprocal, and if neither plaintiff nor her deceased husband owed allegiance to the State of Alabama, then she is not within the act of 1868 and is not entitled to recover."

The exclusion of the photograph, the refusal to charge as requested, and the giving of the charges to which exception was reserved, are now assigned as error.

JASPER N. HANEY, for appellant. — 1. Aliens are as much within the protection of the statute as citizens. See § 12 of Bill of Rights. It declares that " every *person* " shall be protected. Our " federal relations " — treaties with other nations — seem to require a construction of the law which will throw its protection around foreigners as well as citizens. 9 Wheat. 489. The act nowhere uses the word " citizen ; " it is beneficent in its purposes, and applies by its language to all persons.

2. All the evidence was written and introduced by the plaintiff. The charge requested on the effect of it should have been given. The jury, if they believed the testimony, were bound to find for the plaintiff.

3. No authority bearing upon the admissibility of the photograph has been found by me ; but it is submitted that the evidence tended to prove the identity of the murdered man, and it was for the jury to say what the evidence was worth.

4. The first charge requested ought to have been given. It was not abstract, and follows the very words of the statute.

FOSTER & FORNEY, *contra*.

[Appellee's brief did not come into the reporter's hands.]

[Luke v. Calhoun County.]

BRICKELL, C. J. — The fact essential to the support of the action was the identity of the man murdered and the plaintiff's husband. In the recent trial of Udderzook for the murder of Goss, a photograph of Goss was offered for the purpose of identifying him with the dead body, which had been found bearing marks of violence. It was admitted, and on error the supreme court of Pennsylvania affirmed rightly. Am. Law Review, Oct. 1874, p. 18. In the case of *Ruloff* v. *The People* (45 N. Y. 213), it was material to show intimate relations between the accused and two deceased persons who were drowned about the time of the murder with which the accused was charged. Photographic likenesses of these persons, taken after death, were shown to relatives and acquaintances, who were permitted to give their opinion as to their identity. Though they had been taken under circumstances not favorable to the production of a correct likeness, and were not artistic pictures, the court did not hesitate in declaring the propriety of receiving them as evidence. In each of these cases, a photograph, though it is not the original likeness, and is only a copy taken from a negative, is recognized as evidence of the same character as a portrait or miniature, which, when a question of personal identity is involved, and its resemblance is shown, can be used in .evidence. In *Barnes* v. *Ingalls* (39 Ala. 193), it is held, that persons not experts could testify whether a photograph was a good likeness. The court say: " Evidence on such a question stands upon the same footing as evidence of handwriting, the value of property, the identity of an individual, &c.; and we think that the testimony of witnesses, that pictures which the plaintiff, while in defendant's employment, had 'executed for them,' were good likenesses, was competent evidence in this cause."

The plaintiff prior to, and at her husband's death, resided in Canada. She had never been in Alabama. The residence, or rather sojourn here, of her husband, was but for a few months immediately preceding his death, if he was in fact the murdered man. The photograph offered in evidence had been taken in Alabama, and had been sent to her by her husband, with the indorsement in his handwriting. The artist by whom it was taken proved that it was taken about the time, and at the place stated in the indorsement, and that the person for whom it was taken, and whose likeness it was, bore the surname of plaintiff's husband. A witness present when the disguised men carried off the man subsequently murdered, proves that the photograph is a likeness of the murdered man, who bore the name of William C. Luke, one of the names by which plaintiff's husband was known. We are unable to perceive any substantial reason for the rejection of the photograph

[Luke v. Calhoun County.]

and indorsement thereon as evidence.   They seem to us legiti-
mate to establish the fact material to support the action — the
identity of the plaintiff's husband and the man murdered.   A
court cannot refuse to take judicial cognizance that photography
is the art producing *fac-similes*, or representations of objects by
the action of light on a prepared surface.   *Barnes* v. *Ingalls*,
*supra*.   As such it has been so long recognized, the mechanical
and chemical process employed, and the scientific principles on
which it is based are so generally known, that it would be
vain for a court to decline cognizance of it.   If the art was
not judicially noticed, the evidence of the resemblance of the
photograph to the appellant's husband, and to the murdered
man, would require that the photograph should be submitted
to the jury, to enable them intelligently to declare whether
the weight of evidence established the identity.   On a ques-
tion of personal identity, a large latitude is allowed in the ad-
mission of evidence authorizing, in the absence of positive evi-
dence, the introduction of facts, slighter and more insignificant
than the resemblance of a photograph to the person whose
identification is the matter in issue.   Marks upon the person,
though similar marks may be easily fabricated; physical pe-
culiarities, though many persons may bear them; articles of
dress, or whatever fact has a reasonable tendency to establish
the identity, have been received.   The photograph and its in-
dorsement should have been allowed to go to the jury, in con-
nection with all the other evidence bearing on the question of
identity.

The evidence showed that the appellant and her husband
were aliens, subjects of Great Britain, never having been dom-
iciled in Alabama or in the United States.   The court, on the
request of the appellee, charged the jury, that if they believed,
from the evidence, " that plaintiff and her deceased husband,
for whose death plaintiff sues, were aliens, not citizens of Ala-
bama or the United States, the plaintiff cannot recover."   To
the giving of this charge the appellant reserved an exception,
and now assigns it as error.

Murder at common law is defined as the unlawful killing of
a human being, under the king's peace, with malice afore-
thought, either express or implied.   The statutes of this State,
though dividing murder into two) degrees, and specifying the
particular constituents of murder in the first degree, have
wrought no change in the common law definition.   Every un-
lawful and malicious killing is murder under the statutes, as it
was murder at common law.   If not perpetrated by poisoning,
or lying in wait, or in the attempt to commit rape, arson, rob-
bery, or burglary; or if not the offspring of wilfulness, delib-
eration, malice, and premeditation; or attended by any act

[Luke v. Calhoun County.]

evincing a depraved mind regardless of human life, the statute, in tenderness to human frailty, reduces the killing to murder in the second degree, and subjects the offender to a milder punishment than that imposed on murder in the first degree. Degrees in murder the common law did not recognize, and visited every felonious killing with the penalty of death. The statute is designed to mitigate the severity of the common law, and adapt the punishment to the enormity of the offence. The only characteristic the party slain is required to possess is, " a human being, under the king's peace." Be he sane or insane, of good or evil report, " man, woman, child, subject born, or alien, persons outlawed, or otherwise attainted of treason, felony, or premunire, Christian, Jew, Heathen, Turk, or other infidel," if, in the language of the old common law indictment, he was " in the peace of God, and our lord the king," unlawfully and maliciously to take his life is murder. 2 Bish. Cr. Law, § 540. Around all these, the protecting arm of the king, or of the State is thrown. Each and all are equally protected in the right to life and its enjoyment. The words of the statute, under which this suit is brought, are as broad and comprehensive as the common law definition of murder. " Any person," is the language of the statute; not broader or more comprehensive would have been the expression, " Any human being." The husband or widow, or next of kin of any person assassinated or murdered, is entitled to maintain the action, and to the recovery. There is not a word or expression in the statute limiting or qualifying these general words. They comprehend every person who can be assassinated or murdered. So comprehending all who may be the subjects of assassination or murder, a judicial construction cannot limit or narrow them, upon a mere conjecture that the general assembly did not intend to extend to an alien the same measure of protection afforded to natives or naturalized citizens, — a conjecture we could never indulge, and a statutory construction we would never adopt, when the security of person and life is involved, unless demanded by clear, unambiguous language. The suppression of murder — secret murder, more odious than any other unlawful and malicious killing, for the very secrecy is indisputable evidence of malice — is the purpose the statute intends to accomplish. It was supposed that the consequences such murders might visit on the county at large would quicken the diligence of public officers and private citizens to detect, pursue, apprehend, and bring offenders to conviction and punishment. Such conviction bars the suit, or, if it has ripened into judgment, operates as a satisfaction thereof. Be the victim an alien or a citizen, the law is violated, the peace is broken, the security of person and life is lessened, to

the same extent, and as great crime is committed in the killing of the one as the other. The purpose of the statute would not be accomplished if a distinction was drawn between the killing of a citizen and alien; murder would not be suppressed.

It is said by Blackstone, that it was an ancient usage among the Goths in Sweden and Denmark to subject the vill or hundred in which a murder was perpetrated to a heavy amercement, if the murderer was not produced. This custom was introduced into England, according to Bracton, by King Canute, to prevent his countrymen, the Danes, from being privily murdered by the English; and was afterwards continued by William the Conqueror, for the security of his Norman followers. If the person slain was an Englishman, the county was relieved from the amercement. This difference was abolished by a statute of Edward the Third, and thereafter murder was defined, " without regarding whether the party slain was killed openly or secretly, or whether he was of English or foreign extraction." 4 Black. 195. The statute under consideration was doubtless suggested by the later English statutes, in which no difference is observed as to the national character of the murdered victim.

A question not wholly unlike the one we are considering was presented to this court in *Sidgreaves* v. *Myatt*, 22 Ala. 617. The statute of 1830 rendered all words spoken and published of any female of this State, imputing a want of chastity, actionable in themselves. Clay's Dig. 538, § 1. Under this statute it was held, in the case referred to, that a female residing in this State, whether a citizen or a foreigner, could maintain an action for such words.

It is certainly, as insisted by the counsel for the appellee, a legal and political axiom, that " protection and allegiance are reciprocal." The charge of the circuit court, so far from deriving any support from this maxim, is in direct opposition to its letter and spirit. Aliens resident, or sojourning here, do not owe the full measure of allegiance exacted from the citizen, nor can they enjoy all the rights, privileges, and immunities of citizenship. Yet they owe a qualified, local, temporary allegiance. They are bound to obedience to all general laws for the maintenance of peace and the preservation of order. If guilty of any illegal act, or involved in any dispute with our citizens, or with each other, they are amenable to the ordinary tribunals of the country. In return for the qualified allegiance demanded of them, a corresponding protection to life, liberty, and property is extended to them. 2 Kent, 25. We are constrained to the conclusion, that the charge given by the circuit court cannot be sustained.

The first charge requested by appellant, reciting every fact

essential to support the action, instructed the jury, if the facts were shown by the evidence, their verdict should be for the plaintiff, and in form, " We the jury find for the plaintiff, and assess her damages at five thousand dollars." In refusing this charge, the circuit court erred. A party is entitled to a charge asserting a correct legal conclusion, applicable to the evidence, in the terms in which he may express it, and its refusal is error. R. C. § 2756. There was certainly evidence tending to establish every fact recited in the charge. The credibility and sufficiency of the evidence was referred to the jury, and the legal conclusion drawn from these facts was clearly correct.

The third charge requested by the appellant was correctly refused. Though all the evidence in the cause consisted of depositions, or of written statements of the testimony of absent witnesses, these depositions and statements were substituted for the witnesses, and rank no higher than oral evidence. The authorities to which counsel refer, asserting that the court may charge directly on the evidence, when it is in writing, without referring its credibility to the jury, are cases in which there was written evidence excluding parol evidence. The case of *Rigby* v. *Norwood* (34 Ala. 129) is an example. The suit was on a written guaranty, void on its face under the statute of frauds ; a charge directly on the evidence, not referring its credibility to the jury, did not invade the province of the jury, and was permissible. The difference between that and the present case is obvious.

Since this appeal was taken, the general assembly have repealed the statute on which the action is founded. The appellee insists that, as the action is for a penalty, the repeal of the statute creating the penalty is destructive of a right further to prosecute the suit, and in the event of a reversal the cause shall not be remanded. Without expressing any opinion as to the right further to prosecute the suit, we believe the correct practice is the remandment of the cause. The jurisdiction of this court is appellate and revisory, and when judgment is pronounced on the errors assigned, as a general rule, the jurisdiction is exhausted. The effect of the repeal of the statute was not a matter which could or did enter into the judgment we are called to revise. If we pass on its effect now, we would exercise a jurisdiction akin to original, if not strictly original.

The judgment is reversed, and the cause remanded.