FRANKEL, Respondent, v. GERMAN TYROLEAN ALPS COMPANY, Appellant.

St. Louis Court of Appeals, November 27, 1906.

1. **CONTRACTS:** Concession to Make and Sell Photographs: Judicial Notice. Courts will take judicial notice of the science or art of photography and where a photographer was granted by lease the exclusive privilege of "taking and selling photographs" within the limits of a certain concession known as the Tyrolean Alps at the Louisiana Purchase Exposition, the court will take judicial notice that the taking of photographs included the making of silhouettes, and the granting to another of the privilege to make such pictures by photographic process would be a violation of the concession agreement.

2. ——: ——: "Similar." And where the agreement provided that the lessor should not grant "similar" privileges to any other, that stipulation was not violated by granting to another

the privilege of cutting silhouettes from black paper with scissors and pasting them on pieces of white paper and selling the pictures thus made within the limits of the concession; that process of making silhouettes was not "similar" to the process of making them with photographic apparatus.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey*, Judge.

REVERSED.

*Kehr & Tittmann* for appellant.

*L. P. Crigler* for respondent.

BLAND, P. J.—Defendant is a corporation, and obtained from the Louisiana Purchase Exposition Company a concession known as the Tyrolean Alps. By written contract it leased to plaintiff booths 25, 26, and 27, house No. 4, of the Alps, to be used by plaintiff for a photographic studio during the exposition period, and granted to plaintiff, for and during the exposition period, "the sole and exclusive privilege within said concession, of taking and selling photographs of individuals and groups of individuals as well within said studio as without same, in the front of the buildings and mountains, 'Provided, that said lessee shall not obstruct or interfere with the free movement or pleasure of visitors while taking photographs.' "

The lease contains the following covenant: "The said lessor hereby covenants and agrees with said lessee that it will not, during the existence of this contract, grant like or similar privileges hereby granted, to any other person, persons or corporations." The action is for an alleged breach of this covenant, in this, that defendant company, "did on or about the eighth day of October, 1904, grant to one E. J. Perry the right to make and sell a picture of individuals, or of an individual, known in the photographic world as a silhouette." The

Frankel v. Alps Co.

petition alleges, "that from October eighth, the time Perry began operations, down to the filing of this petition, is forty (40) days; that the daily losses during that time, of plaintiff, operating his stand as heretofore, and offering the same production as Perry was offering were $2,000, and that from the time of filing this petition until the thirtieth day of November, the time limit of plaintiff's rights under the contract is ten (10) days; that plaintiff's damages will continue, from this date on till the close of the exposition, in the same proportion as they did from October eighth to November nineteenth; and that for said ten (10) days his damages will be $500, making a total of actual damages to plaintiff of $2,500; for which with costs, plaintiff therefore prays judgment against the defendant company."

The answer was a general denial.

Plaintiff's book of accounts of daily receipts shows the following entries:

| | |
|---|---:|
| 3 days in May and 26 days in June, total 29 days | $1,324.65 |
| 26 days in July | 1,354.75 |
| 27 days in August | 1,573.00 |
| 26 days in September | 2,127.50 |
| October 1st | 96.00 |
| October 3d | 85.50 |
| October 4th | 79.75 |
| October 5th | 33.00 |
| October 6th | 26.50 |
| October 7th | 27.25 |
| October 8th | 46.50 |
| 20 remaining days in October | 471.50 |
| 25 days in November | 599.50 |

Plaintiff's evidence tends to show that before Perry appeared at the Alps, fifty per cent of his receipts were from silhouettes made by photographic process and after his appearance this branch of plaintiff's work practically ceased; that the crowds which theretofore thronged his

booths were about Perry's stand and there was a great falling off in his business. Defendant offered no evidence, but offered a demurrer to plaintiff's evidence, which it is insisted the court should have sustained on two grounds; first, that the evidence is insufficient to show that Perry made silhouettes within its concession, under any grant by it or by its permission; second, that the making of the silhouettes by Perry was not a violation of the covenant of the lease sued upon. The evidence shows that Perry made silhouettes on the village street of the Alps, and very near the booth leased to and occupied by plaintiff. Plaintiff testified as follows:

"I approached Mr. Hughes and told him that I objected to this man being there, as I considered his work an infringement upon my business and upon my right to do business, and he paid no attention to me, but on the contrary, he talked to me in a very impolite manner.

"Q. State what he said? A. He cursed me! said 'God damn you, I know what I am doing,' and as he talked to me in such a manner and did not give me any satisfaction, I left him. Do you want me to continue?

"Q. No—then you left him, you say? A. Yes, sir.

"Q. Now, when, if at all, after that time did you make any complaint about this man Perry to Mr. Hughes? A. The same that I had the conversation with Mr. Hughes, seeing that I got no satisfaction from a verbal interview, I sent a letter by messenger to his office.

"Q. Did you keep a copy of that letter? A. I did not. I do not believe I did.

"Q. After sending that letter, did you have any conversation with Mr. Hughes? A. No, sir; none whatever."

We think plaintiff's evidence is sufficient to show that Perry at least had defendant's permission to make silhouettes in the concession, and it is immaterial to plaintiff's right of recovery whether Perry paid for a concession from defendant to make the silhouettes, if he

was there with the knowledge and consent of defendant, for the purpose of making the pictures, and if the making of them was a breach of the covenant of the lease, plaintiff is entitled to recover. In respect to the second ground, the evidence shows Perry had no photographic apparatus whatever, but cut the silhouettes of individuals from a piece of black paper with scissors and then pasted the pictures on a white card and sold them to his customers at the rate of three for twenty-five cents. Photographers, who were witnesses for plaintiff, described a silhouette as a shadowgraph, a shadow picture which may be made by photographic process or cut out of a piece of black paper with scissors, and testified that they are not commonly made by photographers, are only made by them when ordered or as a fad or novelty. No one but an expert can cut one out of paper. The ordinary person cannot distinguish a shadowgraph (a silhouette taken by the photographic process) from a silhouette cut out of paper. The only means of distinguishing one from the other is by the paper ordinarily used by photographers.

Webster defines a silhouette to be, "a representation of the outlines of an object filled in with a black color; a profile portrait in black, such as a shadow appears to be." The Century Dictionary defines it to be, "1. Originally a portrait in black or some other uniform tint, sometimes varied as to the hair or other parts of lighter lines or a lightening of shade, showing the profile as cast by a candle on a sheet of paper, hence any opaque protrait, design, or image in profile. 2. Opaque representation or exhibition in profile; the figure made by the shadow or a shadowy outline of an object; shadow." Photography is defined by Webster to be, "the science which relates to the action of light on sensitive bodies in the production of pictures, the fixation of images, and the like;" and a photograph as "a picture or likeness obtained by photography."

Courts take judicial notice of the science or art of photography by admitting proved photographs of persons, handwritings, etc., in evidence in a proper case. [Luke v. Calhoun County, 52 Ala. 115; Cowley v. People, 83 N. Y. 1. c. 477; Udderzook v. Commonwealth, 76 Pa. St. 340.] In City of New Orleans v. Robira, 42 La. Ann. 1098, it was held photography was not a mechanical process, under the exemption laws of the State.

The privilege granted plaintiff within the Alps concession was the exclusive one of taking and selling photographs of individuals and groups of individuals, etc. The granting to another the privilege to use a camera or other photographic instrument for the purpose of taking pictures within the concession would have been a breach of the covenant sued on, for the privilege would have been like the one granted plaintiff. The question is, was the privilege exercised by Perry "similar" to that granted plaintiff? If so then there was a breach of the covenant counted on in the petition. Webster defines similar to mean "1. Exactly corresponding, resembling in all respects; precisely like. 2. Nearly corresponding, resembling in many respects; somewhat like; having a general likeness. 3. Homogeneous; uniform."

In Commonwealth v. Fontain, 127 Mass. 1. c. 454, it. is said: "The word 'similar' is often used to denote a partial resemblance only. But it is also often used to denote sameness in all essential particulars."

In Greenleaf v. Goodrich, 101 U. S. 278, in construing the tariff acts of Congress by which certain import duties were levied on certain classified goods, and goods "of similar description," the court held that the phrase "of similar description," is not a commercial term, and the tariff acts do not contemplate that goods classed under it shall in all respects be the same.

These authorities are of no special aid in determining the question in hand. They show, however, that to the judicial mind things may be similar without being

exactly alike. The evidence shows a shadowgraph, made by the photographic process, is similar in appearance to a silhouette cut out of a piece of black paper with scissors. On this similarity plaintiff rests his right to recover. An exact likeness or protrait painted by an artist and a photograph of the same person would be similar in appearance, and if the defendant breached the contract by permitting Perry to cut silhouettes out of black paper with scissors, it would have breached it by permitting an artist to set up an easel and paint portraits of persons or groups of persons inside the concession. A crayon sketch in black of a side view of a face would be similar to a shadowgraph of the same face, and if plaintiff's contention is correct, defendant would have breached the contract had it permitted an artist to sketch an outline of the features of a person, or of groups of persons, on canvas with a charcoal pencil, in short to have permitted the making, painting or drawing of pictures of any person within the concession, by any known process other than by photography, if the picture made should be similar to a photographic silhouette, would have violated the covenant in the lease. The plaintiff did not contract for a monopoly of all and every means known to science or art whereby pictures of persons may be made. His contract gave him a monopoly to apply the science of photography for the purpose of making pictures or photographs within the concession. Scissors are not in the least similar to a camera. A piece of black paper is unlike the sensitive plate and paper used in the art of photography. The act of cutting a silhouette out of a piece of black paper with scissors is in no respect similar to the process of taking and developing a photograph, hence the cutting of silhouettes out of black paper with scissors did not in the least infringe upon the privileges granted plaintiff, and defendant's peremptory instruction should have been given. The judgment is reversed. All concur.